## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALAN ROSA,<br><br>        Plaintiff,<br><br>  v.<br><br>X CORP.; X HOLDINGS CORP.;<br>ELON MUSK; STEVE DAVIS; JOHN<br>DOES 1-10 and ABC CORPS. 1-10,<br><br>        Defendants. | Hon. Brian R. Martinotti<br>Case No.: 2:23-cv-22908-BRM-AME<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion return date: April 15, 2024 |

## DEFENDANTS X CORP. AND X HOLDINGS CORP.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Sean P. Lynch
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
(609) 919.6611
sean.lynch@morganlewis.com

*Attorneys for Defendants X Corp. and*
*X Holdings Corp.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ..................................................................................... 2

        A.    Rosa Voluntarily Enters a Binding Arbitration
              Agreement with Twitter Covering These Claims. .................... 2

        B.    JAMS and Rosa Refuse to Honor the DRA's Fee-Sharing
              Provision. .................................................................................... 4

        C.    Rosa Files This Complaint, Improperly Claiming Twitter
              Waived Its Right to Arbitrate. ................................................... 6

LEGAL STANDARD ............................................................................................ 7

ARGUMENT .......................................................................................................... 9

    I.    The Court Should Compel Rosa to Arbitrate in Accordance
        with the Terms of The Parties' Agreement. .......................................... 9

        A.    The DRA Requires Rosa and Twitter to Share Arbitration
              Fees Unless the Individual Arbitrator Orders Otherwise. ......... 9

        B.    JAMS' Policy on Arbitral Fees Cannot Trump the
              Material Terms of the Parties' Agreement. ............................. 12

        C.    Twitter's Insistence on Its Contractual Rights Did Not
              Waive Its Right to Arbitrate. .................................................... 18

        D.    If An Arbitrator is not Available, the Court Should
              Appoint One. ............................................................................. 22

CONCLUSION ..................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C ASES

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)......................................................................................8, 10

*Assisted Living Assocs. of Moorestown, LLP v. Moorestown Twp.*,
31 F. Supp. 2d 389 (D.N.J. 1998).........................................................16

*AXA Assurance, Inc. v. The Chase Manhattan Bank*,
339 N.J. Super. 22, 770 A.2d 1211 (App. Div. 2001).........................17

*Bahoor v. Varonis Sys., Inc.*,
152 F. Supp. 3d 1091 (N.D. Ill. 2015).................................................17

*Bekele v. Lyft, Inc.*,
918 F.3d 181 (1st Cir. 2019)...............................................................11

*Billie v. Coverall N. Am. Inc.*,
No. 22-718, 2023 WL 2531396 (2d Cir. Mar. 15, 2023) ...................20

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002) ...............................................................10

*Borodaenko v. Twitter, Inc.*,
2023 WL 3294581 (N.D. Cal. May 5, 2023)...................................2, 19

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
238 F.3d 549 (4th Cir. 2001) ..............................................................10

*Brady v. Williams Cap. Grp., L.P.*,
928 N.E.2d 383 (N.Y. 2010)..........................................................11, 17

*Brown v. Peregrine Enters., Inc.*,
No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ..........passim

*Citisteel USA, Inc. v. Gen. Elec. Co.*,
78 F. App'x 832 (3d Cir. 2003) ..........................................................16

*Cornet v. Twitter, Inc.*,
  2023 WL 187498 (N.D. Cal. Jan. 13, 2023) .......................................................... 2

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ........................................................................................... 8

*Essex v. Children's Place, Inc.*,
  No. 15-5621, 2017 WL 6000347 (D.N.J. Dec. 4, 2017) ..................................... 14

*Goobich v. Excelligence Learning Corp.*,
  No. 19-cv-6771, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020) ........................ 16

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*,
  No. 22-5212, 2023 WL 2138693 (S.D.N.Y. Feb. 21, 2023) .............................. 10

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ........................................................................................... 7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) ........................................................................................... 10

*Heisman v. Wyndham Vacation Resorts, Inc.*,
  No. 20-11480, 2021 WL 1138125 (D.N.J. Mar. 22, 2021) .................... 19, 20, 21

*Jaworski v. Ernst & Young U.S. LLP*,
  441 N.J. Super. 464, 119 A.3d 939 (App. Div. 2015) ....................................... 11

*Khan v. Dell Inc.*,
  669 F.3d 350 (3d Cir. 2012) ............................................................................. 23

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ....................................................................................... 7

*Livingston v. Assocs. Fin., Inc.*,
  339 F.3d 553 (7th Cir. 2003) ............................................................................ 11

*Lloyd v. Retail Equation, Inc.*,
  No. 21-17057, 2022 WL 18024204 (D.N.J. Dec. 29, 2022) ............................... 1

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) .......................................................................... 15

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022).........................................................................20

*Nguyen v. Dental Sleep Masters, LLC*,
   No. 17-0732, 2018 WL 6265058 (C.D. Cal. Apr. 30, 2018).............................21

*Puleo v. Chase Bank USA, N.A.*,
   605 F.3d 172 (3d Cir. 2010) ...............................................................9

*Reed v. Navient Sols., LLC*,
   No. 17- 1218, 2020 WL 13701850 (N.D. Ohio Mar. 24, 2020).........................13

*Rivera v. Uniqlo California, LLC*,
   2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) ........................................15

*Rodriguez v. Twitter, Inc.*,
   2023 WL 3168321 (N.D. Cal. May 1, 2023).........................................2

*Sabre GLBL, Inc. v. Shan*,
   No. 15-8900, 2018 WL 1905802 (D.N.J. Apr. 23, 2018), *aff'd in part, rev'd in
   part and remanded*, 779 F. App'x 843 (3d Cir. 2019) ...........................17

*Selman v. FCB Worldwide Inc.*,
   No. B168315, 2004 WL 2729656 (Cal. Ct. App. Dec. 1, 2004).......................15

*Simeon v. Domino's Pizza LLC*,
   No. 17-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019)..............................14

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
   201 F. Supp. 2d 291 (S.D.N.Y. 2002) ...............................................10

*Tharpe v. Securitas Sec. Servs. USA, Inc.*,
   No. 20-13267, 2021 WL 717362 (D.N.J. Feb. 24, 2021)..................................11

*United States v. Weiss*,
   52 F.4th 546 (3d Cir. 2022) ............................................................17

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989)....................................................................8, 9

*Weber v. X Corp.*,
   No. 23-cv-233, 2024 WL 470255 (E.D. Wash. Jan. 8, 2024) .................2, 21, 22

*Young v. Refined Techs., Inc.*,
    No. 22-1032, 2022 WL 3012536 (C.D. Cal. June 17, 2022)..............................14

## PRELIMINARY STATEMENT

Plaintiff Alan Rosa filed this case in court despite admitting he signed a valid and binding arbitration agreement with Defendants X Corp. and X Holdings Corp. (collectively "Twitter") that is governed by the Federal Arbitration Act ("FAA") and covers his alleged claims. Rosa originally submitted an arbitration demand against Twitter asserting the claims in this lawsuit, but then subsequently declined to pay his share of arbitration fees under the parties' arbitration agreement. Rosa declined to pay these fees based on his interpretation of JAMS' Minimum Standards ("Minimum Standards"), which impose a larger fee burden on employers, but are simply not applicable here. Rosa hopes to avoid arbitration by asserting that Twitter waived its right to arbitrate by insisting on its contractual rights. But it is black letter law that the parties' agreement governs the terms of arbitration. *See* 9 U.S.C. § 4 ("arbitration [must] proceed in the manner provided for in [the parties'] agreement"); *Lloyd v. Retail Equation, Inc.*, No. 21-17057, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022) (if the parties entered "a valid arbitration agreement" and the dispute "falls within the scope" of the agreement, "the FAA requires the court to enforce the arbitration agreement in accordance with its terms"). Rosa cannot place blame on Twitter for his decision to eschew his agreement to pay his share of arbitration fees.

Thus, this Court should compel him to arbitrate his claims according to the express terms and conditions of his signed arbitration agreement.[1]

## STATEMENT OF FACTS

### A.    Rosa Voluntarily Enters a Binding Arbitration Agreement with Twitter Covering These Claims.

After X Holdings Corp. and X Corp.'s predecessors purchased Twitter in October 2022, the company began restructuring its workforce and operations, resulting in a reduction in force that affected Rosa. As part of this reduction in force, Rosa was offered significant severance benefits in exchange for a general release of claims, but he declined this offer. Instead, like over 2,200 other former employees, Rosa opted to file a demand for arbitration against Twitter. *See* Declaration of Sean Lynch ("Lynch Decl."), ¶ 2.[2]

Rosa entered into a binding Dispute Resolution Agreement ("DRA") with Twitter. *See* Declaration of Lauren Wegman ("Wegman Decl."), ¶ 5, Ex. A. The DRA gave employees a right to opt out by sending an opt-out form to the human resources department, explaining in bold print on page 3 of a 4-page document:

---

[1] Defendants Elon Musk and Steve Davis are not parties and are not subject to any arbitration agreement with Rosa so the claims against them cannot proceed in arbitration. Those claims should be dismissed (or stayed) for the reasons explained in a separate motion.

[2] Some former employees with arbitration agreements sought to litigate in court, but Twitter successfully moved to compel arbitration. *See, e.g., Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *Weber v. X Corp.*, No. 23-cv-233, 2024 WL 470255 (E.D. Wash. Jan. 8, 2024).

"**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.**" DRA § 8. Section 8 continues that employees would "not be subject to any adverse employment action as a consequence" for opting out. *Id.*

The DRA explicitly notes in its first section that it is "governed by the Federal Arbitration Act." DRA § 1. And Section 10 makes clear: "This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes." DRA § 10.

Section 6, called "**Paying For The Arbitration**," states that "in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees." DRA § 6. By contrast:

> If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, *such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator*.

*Id.* (emphasis added).

Rosa's agreement provides for "arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules." DRA § 5. The agreement defines "JAMS Rules" as "JAMS Employment Arbitration Rules and Procedures." DRA § 3.

**B.    JAMS and Rosa Refuse to Honor the DRA's Fee-Sharing Provision.**

Recognizing that he entered an enforceable arbitration agreement with Twitter, Rosa originally filed his claims as a Demand for Arbitration on April 14, 2023. *See* Dkt. 1 ("Compl.") ¶ 4. Although Section 6 of the Parties' DRA requires apportionment of arbitral fees between the parties, however, JAMS decided to disregard this provision. *See* Compl. ¶ 6. Specifically, Victor Tran—the JAMS case coordinator for Rosa's arbitration—emailed Twitter's counsel on July 18, 2023 stating that: "It has been determined that the Employment Minimum Standards apply in this matter. As such, Twitter is responsible for all the arbitration fees with the exception of Claimant's portion of the filing fee." Lynch Decl. ¶ 4 & Ex. A.

That same day, Twitter's counsel emailed Rosa's counsel explaining that "Section 6 of your client's arbitration agreement with Twitter provides that, where (as here) applicable law does not require Twitter to pay all fees for the arbitration, the fees are to be apportioned between the parties. Consistent with this agreement, Twitter is not prepared to pay more than half of the arbitrator fees. Do you agree to having JAMS issue invoices to each party for half the arbitrator fees?" *See id.* Later on July 18, 2023, Rosa's counsel stated: "We do not agree." *Id.* Rosa's counsel further claimed that the incorporation of the JAMS Rules in DRA § 5 also incorporated JAMS' Minimum Standards, claiming arbitration was a condition of Rosa's employment, and trumped DRA § 6. *See id.*

4

On July 20, 2023, Twitter's counsel responded, stating its position that JAMS' policies cannot trump the "parties' substantive rights and responsibilities under the agreement they both signed." *Id.* Twitter also stated it "is prepared to pay its half of the arbitration fees," but "it will not pay more than that." *Id.* Rosa's counsel responded by reiterating his view that JAMS' rules govern and highlighting DRA § 5 says "any disputes in this regard shall be resolved by the Arbitrator," ignoring that the Arbitrator had not decided to apply the Minimum Standards, JAMS did. *Id.*

On July 21, 2023, JAMS case manager John Graber sent an email to counsel stating that JAMS would not assign the case to an arbitrator or schedule a preliminary conference until Twitter paid nearly all the initial arbitration fees. *Id.* Mr. Graber also stated that, "after the initial deposits are paid, the parties can discuss this issue directly with the arbitrator." *Id.* On July 31, 2023, Twitter's counsel reiterated that Twitter was "prepared to pay its half of the arbitration fees," but would not pay more under the Minimum Standards, which do not apply and cannot negate the express terms of the parties' agreement. *Id.*

On August 21, 2023, Mr. Graber emailed all counsel about another "option": Rosa could "advance the fees to move this arbitration forward" and then later "make an application for costs and fees to the arbitrator for consideration." *Id.* Rosa's counsel did not respond to this email, never acknowledging his option to pay his

portion of the initial fees. JAMS then sent several follow up emails that were not responded to by either party. *See id.*

## C.   Rosa Files This Complaint, Improperly Claiming Twitter Waived Its Right to Arbitrate.

On December 5, 2023, Rosa filed his Complaint in the U.S. District Court for the District of New Jersey. In the Complaint, Rosa concedes: (i) that he "signed and entered into" the arbitration agreement with Twitter discussed above, Compl. ¶ 2, (ii) he filed a Demand for Arbitration with JAMS, *id.* ¶ 4, and (iii) JAMS disregarded the Parties' fee-sharing provision and instead applied its own policies, memorialized in its "Minimum Standards," to require Twitter to pay nearly all arbitral fees, *id.* ¶¶ 5–6.

Rosa alleged that "Twitter has refused to pay its portion of the arbitration fees despite being ordered by JAMS to do so." *Id.* ¶ 7; *see id.* ¶ 10. But Rosa does not refer to the DRA for Twitter's "portion" of the fees, instead referring to JAMS' unilateral assessment of nearly all fees on Twitter under the Minimum Standards.

Rosa also alleged that JAMS "advised Twitter that after the initial deposits are paid, Twitter can raise the issue regarding fees with [the] arbitrator." *Id.* ¶ 8. But JAMS did not state it would honor the arbitrator's interpretation of the parties' agreement. Rosa's claim that Twitter never responded to certain emails (Compl. ¶ 10) ignores the fact that Twitter repeatedly explained its willingness to pay its half of the fees under the DRA, but that it would not give up its contractual right by

6

paying nearly all fees as JAMS insisted. Lynch Decl. ¶¶ 5–7 & Ex. B. Rosa also ignores that *he* failed to respond to JAMS' suggestion that he could pay his half of fees and then apply for relief from the arbitrator later. *Id.* ¶¶ 10–11 & Ex. A.

Finally, Rosa's Complaint asserts that Twitter's conduct represents "obstruction of the arbitration process" that "disentitled [Twitter] from enforcing an arbitration clause." Compl. ¶¶ 11–12. Given the above-described background, Twitter has not obstructed the arbitration process, but has instead insisted on its contractual rights, and is willing to proceed with arbitration as soon as Rosa pays his contractual share of the fees. This Court should compel him to do just that—arbitrate in line with the terms of the Parties' agreement.

## LEGAL STANDARD

Arbitration is "strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Accordingly, "arbitrators wield only the authority they are given." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). When parties want to authorize an arbitrator to settle their disputes, they "may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Id.* "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Id.* (citation omitted).

7

"[C]ourts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) ("[T]he purpose behind [the FAA] was to ensure judicial enforcement of privately made agreements to arbitrate.").

Section 4 of the FAA incorporates this requirement to strictly adhere to the terms of the parties' agreement. When a party petitions to compel arbitration under this provision, the party must seek "an order directing that such arbitration proceed *in the manner provided for in [the parties'] agreement*." 9 U.S.C. § 4 (emphasis added). If the other party has failed to comply with the agreement, "the court shall make an order summarily directing the parties to proceed with the arbitration *in accordance with the terms thereof*." *Id.* (emphasis added). As a result, "in the absence of a threshold question regarding the validity of the arbitration agreement itself or the applicability of an arbitration agreement to a given dispute, the FAA '*requires* courts to enforce privately negotiated agreements to arbitrate … *in*

*accordance with their terms*.'" *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181 (3d Cir. 2010) (quoting *Volt Info.*, 489 U.S. at 478) (italics in original).

## ARGUMENT

### I.   The Court Should Compel Rosa to Arbitrate in Accordance with the Terms of The Parties' Agreement.

This Court should issue an order compelling Rosa to proceed with arbitration "in the manner provided for in [the parties'] agreement," including its fee-sharing provision, under FAA Section 4.

### A.   The DRA Requires Rosa and Twitter to Share Arbitration Fees Unless the Individual Arbitrator Orders Otherwise.

In the DRA—the parties' agreement whose terms necessarily shape the parties' right to arbitration—Rosa and Twitter agreed to share arbitration fees with Twitter if permitted under applicable law. As set forth in its entirety above, the relevant provision of the DRA states that, "[i]f under applicable law, "the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." DRA § 6.

There is no dispute that such fee-sharing is permissible here. Under the FAA, the Supreme Court has adverted to the possibility that an arbitration agreement might operate as an invalid "prospective waiver of a party's right to pursue statutory remedies" only if "filing and administrative fees attached to arbitration … are *so*

9

*high as to make access to the forum impracticable*." *Am. Exp.*, 570 U.S. at 236 (emphasis added) (citation omitted); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000). The Supreme Court made clear, however, that "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the ***right to pursue*** that remedy." *Am. Exp.*, 570 U.S. at 236 (emphasis in original).  Thus, courts have widely held "that some showing of individualized *prohibitive expense* is necessary to invalidate an arbitration agreement." *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (emphasis added); *see also, e.g., Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) ("[T]he appropriate inquiry is … a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs[.]").

This standard requires that, to avoid fee-sharing, the Claimant make an individualized showing that he would otherwise lack the financial ability to proceed with the arbitration. *See Green Tree*, 531 U.S. at 90-91 ("the record does not show that [plaintiff] will bear [prohibitively large] costs if she goes to arbitration"). Absent such a showing—which is necessarily a case-by-case inquiry including the Claimant's financial situation—courts have refused to strike down fee-splitting agreements. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 609 (3d Cir. 2002); *Stewart*, 201 F. Supp. 2d at 293-94; *Bradford*, 238 F.3d at 558-59; *Gordon v. Wilson*

*Elser Moskowitz Edelman & Dicker LLP*, No. 22-5212, 2023 WL 2138693, at \*6 (S.D.N.Y. Feb. 21, 2023).

Many states follow the same basic approach and do not prohibit the sharing of fees. *See, e.g.*, *Bekele v. Lyft, Inc.*, 918 F.3d 181, 188-89 (1st Cir. 2019) (Massachusetts); *Brady v. Williams Cap. Grp., L.P.*, 928 N.E.2d 383, 387 (N.Y. 2010) (New York); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553 (7th Cir. 2003) (Illinois and Wisconsin). New Jersey is apparently even more accommodating of fee-sharing arrangements, generally holding they are not unconscionable (and thus are enforceable) where the "employees would [not] have to shoulder the entire pecuniary burden of the arbitration process" but would equally share those costs "to the extent permitted by law." *Jaworski v. Ernst & Young U.S. LLP*, 441 N.J. Super. 464, 482, 119 A.3d 939, 951 (App. Div. 2015); *cf. Tharpe v. Securitas Sec. Servs. USA, Inc.*, No. 20-13267, 2021 WL 717362, at \*5 n.6 (D.N.J. Feb. 24, 2021) (noting "the New Jersey Appellate Division held that a cost-splitting provision was not unconscionable, regardless of evidence of an employee's financial constraints, because the New Jersey Supreme Court had only ever found cost-shifting provisions unconscionable," but predicting the New Jersey Supreme Court, when it considers this issue, will follow federal law).

By the terms of DRA § 6, then, Rosa cannot avoid sharing the arbitration fees without putting forward meaningful evidence of an inability to pay. Then, under the

DRA, the individual arbitrator would resolve "any disputes in that regard." DRA § 6. Put differently, the DRA gives Twitter the express and unambiguous right not to pay the disputed fees unless and until Rosa makes a sufficient showing under applicable law to the individual arbitrator.

Thus, Rosa should be compelled to arbitrate, to share the initial case opening fees, and then to bring any argument regarding the fee arrangement or his ability to pay to the arbitrator—which is what the JAMS case manager explained that Rosa could do.

**B.      JAMS' Policy on Arbitral Fees Cannot Trump the Material Terms of the Parties' Agreement.**

In failing to pay his share of fees to initiate the arbitration before filing this Complaint, Rosa relied on JAMS' insistence that Twitter pay more than its contractual share of the arbitral fees. But JAMS did not base its position on the Parties' agreement itself. Instead, JAMS' position rested on its policy decision to disregard the Parties' agreements in violation of the FAA.[3] That position cannot excuse Rosa from paying his share of arbitration fees for at least three reasons.

***First***, JAMS' Minimum Standards are not incorporated into the terms of the DRA. The DRA never refers to the Minimum Standards, much less states that they

---

[3] Puzzlingly, JAMS has stated both that the Minimum Standards trump the parties' agreement ***and*** that Rosa can waive the Minimum Standards and agree to pay more of the arbitral fees. Lynch Decl. ¶¶ 4, 10 & Ex. A. But these inconsistent positions ignore that Rosa already has agreed to pay more than the Minimum Standards require—in the parties' arbitration agreement. That agreement must be enforced.

12

govern. And the DRA is the contracting parties' "full and complete agreement relating to the formal resolution of [the covered] disputes," DRA § 10, so it cannot be supplemented with unwritten terms.

To be sure, the DRA states that arbitration will take place under the "then-current JAMS Rules." DRA § 5. But the JAMS Rules themselves make clear that the Minimum Standards are distinct from the Rules, characterizing the Minimum Standards as one of the "JAMS policies" rather than part of the Rules themselves. JAMS Employment Rule 2(a). And, of course, the reference in DRA § 6 to "applicable law" cannot support applying the Minimum Standards because "the JAMS Minimum Standards clearly are not law." *Reed v. Navient Sols., LLC*, No. 17-1218, 2020 WL 13701850, at \*4 (N.D. Ohio Mar. 24, 2020).

**Second**, the JAMS Minimum Standards do not apply on their own terms. The Minimum Standards apply **only** when arbitration is "required as a condition of employment." Lynch Decl., Ex. B at 2, also available at https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Employment_Min_Stds-2009.pdf. The Minimum Standards reiterate that point a few paragraphs later: "If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards." *Id.*

Here, however, the DRA was ***not*** required as a condition of employment, as it expressly stated in bolded text: "**Arbitration is not a mandatory condition of Employee's employment at the Company**." DRA § 8. Rather, employees had 30 days after their receipt of the DRA "to opt out and not be subject to this Agreement." *Id.* Such employees would "not be subject to any adverse employment action as a consequence of that decision and [could] pursue available legal remedies without regard to [the DRA]." *Id.* Numerous Twitter employees made use of this opportunity to opt out of the DRA—and some of those employees are now pursuing litigation in federal court—but Rosa did not opt out.

This type of opt-out provision is a quintessential example of an arbitration agreement that, under well-settled law, is ***not*** a condition of employment. *See Essex v. Children's Place, Inc.*, No. 15-5621, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017) ("Plaintiffs were not required to participate in TCP's arbitration program as a condition of employment with TCP. … [T]he Arbitration Agreement expressly state[s] that signing the Arbitration Agreement is not a mandatory condition of employment. … To the contrary, the Arbitration Agreement has a clear 'opt out' provision."); *see also*, *e.g.*, *Young v. Refined Techs., Inc.*, No. 22-1032, 2022 WL 3012536, at *5 (C.D. Cal. June 17, 2022) (referring to "an opt-out provision" as "[o]ne of the typical indicia that a contract is not a condition of employment"); *Simeon v. Domino's Pizza LLC*, No. 17-5550, 2019 WL 7882143, at *5 (E.D.N.Y.

14

Feb. 6, 2019) ("[T]he Arbitration Agreement … makes clear that dispute resolution by arbitration is **not** a mandatory condition of Simeon's employment" by providing "30 calendar days from the date you sign the Arbitration Agreement to opt out of the duty to arbitrate through the procedures described in the Agreement*.");* *Rivera v. Uniqlo California, LLC*, 2017 WL 6539016, at \*7 (C.D. Cal. Sept. 8, 2017) (finding that the arbitration agreement was not a condition of employment because it "expressly states that it is not mandatory" in the opt-out provision.); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (even an opt out procedure that required "overnight delivery," though burdensome, was not illusory and "some drivers [] did opt out" so arbitration was not required).[4]

Because the DRA had an opt-out provision and was not required as a condition of Petitioners' employment, the Minimum Standards cannot apply even if they were consistent with the rest of the DRA. For this reason, too, there is no legal or factual basis for Rosa to avoid paying arbitration fees and instead file suit in Court.

Thus, not only does JAMS' attempt to impose the Minimum Standards ignore the parties' agreement, but its FAA-violating approach also rests on a faulty application of its own administrative policy. Rosa should be compelled to arbitrate

---

[4] The JAMS Rules likewise prohibit fee-splitting only when the "Arbitration is based on a clause or agreement that is required as a condition of employment." JAMS Rule 31(c); *see, e.g.*, *Selman v. FCB Worldwide Inc.*, No. B168315, 2004 WL 2729656, at \*3 (Cal. Ct. App. Dec. 1, 2004).

15

in accordance with the parties' agreement—not in accordance with the unincorporated JAMS Minimum Standards, which do not apply here in any event.

***Third***, although as discussed above there is no conflict between JAMS' Minimum Standards and the arbitration agreement because JAMS' Minimum Standards simply do not apply, even if there were such a conflict, the law is clear that the fee-sharing provision of the arbitration agreement would trump the Minimum Standards in any event. A general agreement to arbitrate under an arbitral forum's rules (like JAMS or AAA) does not negate a contrary, explicit contractual term addressing the payment of arbitration fees. In a contract, "the more specific terms control over the general." *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 837 (3d Cir. 2003); *Assisted Living Assocs. of Moorestown, LLP v. Moorestown Twp.*, 31 F. Supp. 2d 389, 399 (D.N.J. 1998) ("[I]t is a well-settled principle of contract interpretation that, in construing the contract as a whole, specific terms or clauses control general terms or clauses.").

Indeed, courts have held in cases just like this one that a specific arbitration fee provision controls over a general reference to arbitration rules. *E.g.*, *Goobich v. Excelligence Learning Corp.*, No. 19-cv-6771, 2020 WL 5593011, at *3 (N.D. Cal. Sept. 18, 2020) ("***While the parties may have intended to utilize the AAA rules, it does not follow that they intended those rules govern over express provisions in the [agreement] to the contrary***. Moreover, applying the fee schedule of the AAA

16

Employment Rules 'would impermissibly render the more specific provisions in [the arbitration agreement] superfluous.'") (emphasis added) (citation omitted); *Brady*, 928 N.E.2d at 386 ("[T]he terms of the parties' Arbitration Agreement, rather than the AAA rules, control[]."); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015) ("[A]ny default fee provisions in the … JAMS rules are overridden by the express Agreement that the parties signed."). This court, likewise, has held that "the JAMS Minimum Standards" cannot "trump the parties' express" agreement if the two require opposite results—including with respect to fee allotment. *Sabre GLBL, Inc. v. Shan*, No. 15-8900, 2018 WL 1905802, at *5 n.8 (D.N.J. Apr. 23, 2018), *aff'd in part, rev'd in part and remanded*, 779 F. App'x 843 (3d Cir. 2019).[5]

Any other interpretation of the DRA would make the fee-apportioning language in DRA § 6 completely meaningless, in violation of basic contract principles. *See, e.g.*, *United States v. Weiss*, 52 F.4th 546, 552 (3d Cir. 2022) (applying "canon against superfluity" whereby every word in a document "should be given effect"); *AXA Assurance, Inc. v. The Chase Manhattan Bank*, 339 N.J.

---

[5] The Third Circuit did not disagree with this principle—instead noting that where arbitration agreements are ambiguous, it is the arbitrator who should interpret them. *Sabre*, 779 F. App'x at 859. But the principle holds that the parties' agreement must control the issue of fee sharing. And Twitter agrees the arbitrator should resolve any dispute about the meaning of that agreement. In no event, however, should JAMS impose its default fee sharing policy on parties who have agreed to different rules, and especially not before the arbitrator is able to resolve the issue.

17

Super. 22, 26, 770 A.2d 1211, 1214 (App. Div. 2001) ("Individual clauses and particular words must be considered in connection with the rest of the agreement, and all parts of the writing and every word of it, will, if possible, be given effect.").

In another recent dispute in which the AAA (like JAMS here) improperly tried to override an arbitration agreement through its fee schedule, the Second Circuit aptly observed that the employer "cannot be faulted for standing on its contractual entitlements." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023). The AAA "adher[ed] to its own Fee Schedule rather than the parties' bargained-for terms," and the employer had every right to insist on the arbitration agreement's terms being applied. *See id.* at *2-3. The same principle applies here. Twitter is standing on the terms of the DRA, and the FAA entitles Twitter to do so. Its contractual right to individual, case-by-case fee apportionment by the arbitrator specifically trumps any general reference to JAMS' rules.

### C.   Twitter's Insistence on Its Contractual Rights Did Not Waive Its Right to Arbitrate.

In his Complaint, Rosa claims that Twitter waived its right to arbitrate by insisting that Rosa honor the fee-sharing provision in his arbitration agreement. That is plainly incorrect.

As an initial matter, it is not true that Twitter "obstruct[ed] the arbitration process." Compl. ¶¶ 11–12. Instead, Twitter expressly stated—multiple times—that it was ready and willing to pay its share of the arbitration initiation fees and to

proceed with arbitration once Rosa satisfied his fee-sharing obligation under the DRA. Lynch Decl. ¶¶ 5, 7, 9. Indeed, JAMS informed the parties that if Rosa had done so, the arbitration could proceed, and the arbitrator then could have resolved any dispute about fees between the parties. *Id.* ¶¶ 8, 10. Rosa refused to do so without explanation.

Nor is it true that **Twitter** "fail[ed] to advance required fees for an arbitration to commence." Compl. ¶ 11. As explained above, Twitter is not required to pay all the arbitration fees under the parties' agreement. *See supra* Sections A–B. JAMS (and Rosa) must necessarily ignore the actual terms of the DRA and misapply JAMS' Minimum Standards to argue otherwise.

The present factual scenario is readily distinguishable from *Heisman v. Wyndham Vacation Resorts, Inc.*, No. 20-11480, 2021 WL 1138125, at *2 (D.N.J. Mar. 22, 2021), which Rosa cites in his Complaint to argue that Twitter has waived arbitration. *See* Compl. ¶ 11. That case took for granted that the claimant "complied with the rules of arbitration as provided in the Agreement" and the defendant refused to comply with the rules set out in "the parties' agreement." *Heisman*, 2021 WL 1138125, at *2–3. Here, the situation is exactly the opposite. Rosa ignored the parties' agreement to avoid its obligation to share fees with Twitter, whereas Twitter seeks to enforce DRA § 6.

19

In finding waiver, the *Heisman* court emphasized that the defendant prevented arbitration from proceeding—essentially standing in default—and the plaintiffs had no other option but to file in court. *Id.* at *3–4 (noting a party waives the right to arbitrate if it "raise[s] ***unjustifiable*** objections to a valid demand for arbitration" forcing the other side "to abandon its demand" (emphasis added) (citations omitted)).

In contrast, where a party to an arbitration agreement simply "stand[s] on its contractual entitlements," even in the face of the arbitral forum seeking to impose its inconsistent "fee schedule" on the party, that party has ***not*** "waived arbitration." *Brown*, 2023 WL 8800728, at *3; *see also Billie v. Coverall N. Am. Inc.*, No. 22-718, 2023 WL 2531396, at *3 (2d Cir. Mar. 15, 2023) (not waiver for defendant to "refus[e] to advance [claimant's] portion of the arbitrator's compensation" where "the arbitration agreement did not require [defendant] to pay the arbitrator's fees" but instead contemplated fee-sharing). In *Brown*, just as here, the defendant repeatedly "communicated to the plaintiffs and the [arbitral forum] that it was 'ready, willing, and able to proceed to arbitration on terms consistent with the'" parties' agreement, yet the AAA insisted on imposing its own fee schedule not the fee-sharing required by the parties' agreement. 2023 WL 8800728, at *3. A defendant's insistence on the parties' contractual terms does not waive arbitration. *Id.* (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412 (2022) ("[A] court must

20

hold a party to its arbitration contract just as the court would to any other kind."));
*see also Nguyen v. Dental Sleep Masters, LLC*, No. 17-0732, 2018 WL 6265058, at
*9 (C.D. Cal. Apr. 30, 2018) ("[A] defendant will only be said to have breached an
arbitration agreement when refusing to submit to arbitration upon a plaintiff's
request if the plaintiff has properly initiated arbitration proceedings pursuant to the
parties' agreement."). *Heisman* did not hold otherwise, instead faulting the
defendant for having "materially breached the [parties'] Agreement." 2021 WL
1138125, at *4.

   Here, JAMS made clear that Rosa had the option to pay his share of the
arbitration initiation fees under the DRA and then raise the issue of arbitration fees
to the arbitration if it wished. Rosa declined—relying on the inapplicable JAMS'
Minimum Standards rather than the parties' agreement. Twitter is not the party
ignoring (and materially breaching) the DRA; Rosa is.  Just as in *Brown*, Twitter has
waived nothing.

   On this point, *Weber v. X Corp.*, No. 23-cv-233, 2024 WL 470255 (E.D.
Wash. Jan. 8, 2024) is instructive. In that case, Arnaud Weber, Twitter's former Vice
President of Consumer Engineering, argued that the court should find that Twitter
waived its right to arbitrate because it had "disputed the applicability of certain
JAMS rules." The court expressly rejected Weber's argument that Twitter had
waived its right to arbitrate and compelled Weber to arbitration.  *Id.* at *1, 6-7.

Weber also had requested that any order compelling arbitration specifically direct
Twitter to "comply with JAMS Rules and JAMS's rulings on and interpretations of
its rules." *Id.* at *7. The court refused to grant such relief.  Instead, the court
"order[ed] the parties to proceed to arbitration and to strictly observe the terms of
the DRA." *Id.* at *8 (citing 9 U.S.C. § 4). The same result should apply here.

Aside from his specious waiver argument, Rosa's Complaint offers no reason
for this Court to decline to compel him to arbitrate in accordance with the DRA,
including by paying his equal share of the arbitration fees to initiate the arbitration
and submitting any further fee dispute to the individual arbitrator. This Court should
do exactly what *Brown* contemplated in a case like this one: "compel[] arbitration
under section 4 of the FAA and direct[] plaintiffs to pay their equal share of the
arbitration fees under the [DRA] to initiate such arbitration before" JAMS. 2023 WL
8800728, at *4. JAMS has already explained that if Rosa pays half of the opening
fees and Twitter pays the other half (what Twitter has repeatedly promised to do)
that JAMS will administer this arbitration. Rosa should be compelled to do just that.

### D.     If An Arbitrator is not Available, the Court Should Appoint One.

Rosa implies that because Twitter has declined to pay more in arbitration fees
than the DRA requires, the JAMS arbitral forum has become unavailable. *See*
Compl. ¶¶ 6–12. As noted above, that is not true. JAMS itself stated that Rosa can

pay his share of arbitral fees for the case to proceed to an arbitrator and Rosa has chosen not to do so. Rosa should be compelled to do so.

Even if JAMS' refusal to honor the parties' agreement made it an unavailable forum, however, the appropriate remedy is not to force Twitter to litigate these claims in court. Rather, under the FAA, the Court can and should appoint a new arbitrator. Section 5 of the FAA "provides a mechanism for substituting an arbitrator when the designated arbitrator is unavailable," *Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012). That unavailability may either arise due to a party's "fail[ure] to avail himself of" the method for appointing an arbitrator named in the agreement or there is a "lapse in the naming of an arbitrator" for whatever reason. 9 U.S.C. § 5; *see Brown*, 2023 WL 8800728, at *4 n.2 (distinguishing between the "lapse" provision and the "failure to avail" provision, and noting court may appoint new arbitrator if party fails to follow the parties' agreement in initiating arbitration). In either case, the Court should appoint a new arbitrator so long as the parties have not "unambiguously expressed their intent not to arbitrate their disputes in the event that the designated arbitral forum is unavailable." *Khan*, 669 F.3d at 354. Here, the DRA simply states: "Employee and the Company agree to bring any claim in arbitration before [JAMS]." DRA § 5. That language is nowhere near enough to suggest that JAMS is the exclusive arbitration provider acceptable to the contracting parties. *See Khan*, 669 F.3d at 355 (holding that arbitration provider was not integral even though

23

the agreement "state[d] [in all caps] that all disputes 'shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum'") (capitalization removed).

To the extent JAMS is unavailable, it is only because Rosa insists on application of the Minimum Standards despite contrary language from the DRA. Rosa's failure to pay his contractual share of the initiation fees may represent a refusal to avail himself of the JAMS arbitral form. The solution under Section 5 is not to proceed in Court, however, it is to proceed before a substitute arbitrator who will preserve the remaining terms of the DRA.

## CONCLUSION

For these reasons, the Court should compel Rosa to arbitrate his claims in accordance with the terms in the DRA. Or, in the alternative, the Court should appoint a substitute arbitrator.

Dated:  March 22, 2024                    Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP

                                          */s/ Sean P. Lynch*
                                          Sean P. Lynch
                                          502 Carnegie Center
                                          Princeton, NJ  08540
                                          (609) 919.6611
                                          sean.lynch@morganlewis.com

                                          *Attorneys for Defendants X Corp. and*
                                          *X Holdings Corp.*