## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN ROSA,<br><br>                   Plaintiff,<br><br>      v.<br><br>X CORP.; X HOLDINGS CORP.;<br>ELON MUSK; STEVE DAVIS; JOHN<br>DOES 1-10 and ABC CORPS. 1-10,<br><br>               Defendants. | Hon. Brian R. Martinotti<br>Case No.: 2:23-cv-22908-BRM-AME<br><br>**DECLARATION OF LAUREN WEGMAN IN SUPPORT OF DEFENDANT X CORP.'S MOTION TO COMPEL ARBITRATION**<br><br>Motion return date: April 15, 2024 |

I, Lauren Wegman, do declare under the penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I have worked at X Corp. (formerly known as Twitter, Inc.) for 5 years. In March 2023, Twitter, Inc. merged with X Corp. and Twitter no longer exists. Currently, I hold the title of Senior Director, People. My team is responsible for Global People Operations, which includes employee onboarding and off-boarding and management of employee data and personnel changes.

2.      As part of my job duties, I have personal knowledge of X Corp.'s current processes and practices, and its historical processes and practices (when the company was known as Twitter, Inc.) dating back at least to July 2019, for

onboarding new employees, including how X Corp. presents applicants for U.S. positions with an offer letter and a Dispute Resolution Agreement, the process for applicants to review, sign, and submit documentation relating to their prospective employment, and X Corp.'s record-keeping systems related to the applicant's execution of the offer letter and Dispute Resolution Agreement and submission of a request, if any, to opt out of the Agreement, all of which X Corp. maintains in the ordinary course of business. My knowledge of X Corp.'s practices is based on information I have learned in the course of my work, including through my review of X Corp. documents and my understanding of its systems. If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

3.     Since at least 2019, a member of X Corp.'s Global People Operations Team has prepared offer packets for candidates generating onboarding documents, including an offer letter and onboarding packet. When the offer is accepted, the new hire record—which includes the offer letter and onboarding packet—is then transferred to our HRIS system (called Workday) where an employee file is created. The offer packet includes the applicant's offer letter and a Dispute Resolution Agreement, among other things. X Corp. sends the applicant's offer packet to the applicant using the email address that the applicant provided during the application process, or the employee's company email address if the offer

packet was generated during the conversion from an independent contractor position to a position as a full-time employee.

4.      An applicant's offer letter explains the steps the applicant needs to take to accept the offer, which includes signing the offer letter and the other documents in the offer packet, including the Dispute Resolution Agreement, and returning them to X Corp. by a specific date on which the offer expires.

5.      I have reviewed the personnel records for Plaintiff Alan Rosa, which contain a signed offer letter and a Dispute Resolution Agreement bearing Rosa's signature and dated December 13, 2021. Attached hereto as Exhibit A is a true and correct copy of Rosa's signed offer letter and his Dispute Resolution Agreement, which are maintained in his personnel records in the ordinary course of business. On December 13, 2021, Rosa signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was shared with Rosa.

6.      Based on my experience and job responsibilities at X Corp., I know that X Corp.'s policy is to allow employees to opt out of X Corp.'s Dispute Resolution Agreement so long as an employee submits a Dispute Resolution Agreement Opt-Out Form to Human Resources within 30 days of receipt of the Dispute Resolution Agreement. For this reason, the Dispute Resolution Agreement

is not a condition of employment at X Corp. Dispute Resolution Agreement Opt-Out Forms are kept in an employee's personnel records in the ordinary course of business. Rosa does not have a Dispute Resolution Opt-Out Form in his personnel records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: March 22, 2024

_____

Lauren Wegman