# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALAN ROSA,<br><br>    Plaintiff,<br><br>v.<br><br>X CORP.; X HOLDINGS CORP.; ELON MUSK; STEVE DAVIS; JOHN DOES 1-10, and ABC CORPS. 1-10.<br><br>    Defendants. | Hon. Brian R. Martinotti<br>Case No. : 2 :23-cv-22908-BRM-AME<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion return date : May 6, 2024 |

## PLAINTIFF, ALAN ROSA'S, MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Bruce L. Atkins, Esq. (batkins@deutschatkins.com)
Debra M. McGarvey, Esq. (dmcgarvey@deutschatkins.com)
Jason T. Mushnick, Esq. (jmushnick@deutschatkins.com)
DEUTSCH ATKINS & KLEINFEDLT, P.C.
21 Main Street, Suite 352
Hackensack, NJ 07601
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES……………………………………………………………… ii

PRELIMINARY STATEMENT……………………………………………………….1

PROCEDURAL HISTORY……………………………………………………………3

FACTUAL ALLEGATIONS …………………………………………………………9

    A. PER THE OFFER LETTER, TWITTER MANDATED ROSA TO SIGN THE DRA, AND ROSA COULD ONLY OPT-OUT AFTER SIGNING IT……………………...8

    B. THE DRA REQUIRES TWITTER TO PAY ALL COSTS EXCEPT THE INITIAL FILING FEE PURSUANT TO JAMS RULES……………………....…………9

    C. ROSA HONORS THE DRA BY FILING A DEMAND FOR ARBITRATION WITH JAMS……………………………………………………………………………...9

    D. JAMS DIRECTS TWITTER TO PAY INITIAL INVOICE, WHICH JAMS REFUSES TO DO IN VIOLATION OF JAMS RULES AND THE DRA……………………11

    E. TWITTER IS ACTING IN BAD FAITH AS TWITTER REFUSES TO PROCEED WITH 891 ARBITRATIONS AND ANY ARBITRATIONS OUTSIDE THE STATE OF CALIFORNIA…………………………………………………………14

    F. ROSA PROPERLY FILED THIS COMPLAINT AS TWITTER WAIVED ITS RIGHT TO ARBITRATE BY REFUSING TO COMPLY WITH THE JAMS RULES AND DRA………………………………………………………………………...15

LEGAL ARGUMENT…………………………………………………………………16

I.   THE COURT SHOULD DENY DEFENDANT'S MOTION BECAUSE TWITTER WAIVED ITS RIGHT TO COMPEL ARBITRATION WHEN IT REFUSED TO FOLLOW JAMS RULES …………………………………………………………...16

    A. THE DRA REQUIRES TWITTER TO PAY ALL COSTS EXCEPT THE INITIAL FILING FEE PURSUANT TO JAMS RULES, WHICH TWITTER REFUSES TO DO…………………………...……....……………………17

    B. BY FAILURE TO PAY ITS PORTION OF THE ARBITRATION FEES, TWITTER WAIVED ITS RIGHT TO COMPEL ARBITRATIONS…………….…....…………………………..…………………19

    C. TWITTER CANNOT COMPEL ARBITRATION BECAUSE ARBITRATION HAS BEEN DISMISSED DUE TO TWITTER'S FAILURE TO PAY THE ARBITRATOR……………………………………………………………21

    D. THE COURT SHOULD RESOLVE THE DISPUTE BECAUSE TWITTER WAIVED ITS RIGHT TO ARBITRATE ……………………………………24

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)………………………………..17

*Edwards v. Hovensa*, LLC, 497 F.3d 355, 363 (3d Cir. 2007)……………………………17

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018)……………………………………..17

*Forby v. One Techs.*, LP, 616 F. Supp. 3d 588, 591, 602 (N.D. Tex. 2022)……………..24

*Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *1, 2020 U.S. Dist. LEXIS 161510, at *2 (N.D. Cal. Sept. 3, 2020)……………………………………………24

*Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 U.S. Dist. LEXIS 55369, *10 (D.N.J. Mar. 22, 2021)……………………………………………………………….................16

*Hernandez v. MicroBilt Corp.*, 88 F.4th 215 (3d Cir. 2023)………………………………..21

*Page v. GPB Cars 12*, LLC, No. CV 19-11513, 2019 WL 5258164 (D.N.J. Oct. 17, 2019)…22

*Passion for Restaurants, Inc. v. Villa Pizza, LLC*, No. CV2015790KSHCLW, 2022 WL 18024209 (D.N.J. Dec. 30, 2022)……………………………………………………….....21

*Pierce v. Ortho Pharmaceutical Group*, 84 N.J. 58, (1980)……………………………….8

*Roach v. BM Motoring, LLC*, 155 A.3d 985, 995 (N.J. 2017)………………………….…..22

*Styczynski v. MarketSource*, Inc., 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018)………………17

*Waters v. Vroom Inc.*, No. 22-cv-1191 TWR (AGS), 2023 WL 187577, at *1, 2023 U.S. Dist. LEXIS 7252, at *1 (S.D. Cal. Jan. 13, 2023)…………………………………………………24


**STAUTES**

California Labor Code § 1102.5……………………………………………………………...8

California WARN Act Cal. Lab. Code §1400 et seq…………………………………………16

Conscientious Employee Protection Act ("CEPA"), <u>N.J.S.A.</u> § 34:19-2, et seq…………..…8

Federal WARN Act, 29 U.S.C. §§2101 et seq……………………………………………..…8

New York Labor Law § 740………………………………………………………………..…8

New York WARN Act N.Y. Lab. Law §§ 860 et seq ……………………………………..……8

**RULES**

AAA rules. 88 F.4th………………………………………………………………………..21

Fed. R. Civ. P. 12(b)(2)…………………………………………………………….……7

Fed. R. Civ. P. 12(b)(6)…………………………………………………………….……7

**OTHER AUTHORITIES**

Dispute Resolution Agreement…………………………………………………………..passim

.

## PRELIMINARY STATEMENT

Plaintiff Alan Rosa ("Plaintiff" or "Rosa") files this brief in Opposition to Defendants X Corp. and X Holdings Corp. (collectively "Defendants" or "Twitter") Motion to Compel Arbitration.

Plaintiff, a former employee of X Corp. and X Holdings Corp. ("Twitter") previously known as Twitter, was wrongfully terminated in retaliation for objecting to and refusing to engage in conduct he believed to be unlawful contrary to the instructions of Defendants and disclosing this to Twitter's Deputy General Counsel and Vice President, Legal. After Plaintiff filed a Demand for Arbitration with the Judicial Arbitration and Mediation Services ("JAMS") and paid the initial filing fee, Twitter refused to pay the arbitration fees that it was mandated to pay per JAMS Rules and the DRA, thus obstructing the arbitration process such that it was no longer entitled to arbitration pursuant to the relevant law as Twitter waived its right to arbitrate, thus leaving Plaintiff with no other choice then to file his complaint in federal district court.

Twitter contends JAMS Rules should not apply and that fees should be equally apportioned, yet, Twitter disregards the crucial fact that Twitter, not Rosa, selected JAMS as the entity to oversee the arbitration. Moreover, the DRA, which Twitter drafted, requires that the arbitration proceeding between Rosa and Twitter be administered before JAMS, "**pursuant to the then-current JAMS Rules**". These rules require Rosa, the claimant, to pay an initial filing fee, which he did, and require Twitter, the employer, to pay all other arbitration fees, including fees to the arbitrator, which Twitter failed to do. Twitter continued to refuse to pay the mandated filing fees even after JAMS advised Twitter that JAMS Rules apply to Rosa's arbitration, directed him to pay the mandated arbitration fees, and bring the fee dispute issue before the arbitrator.

Moreover, Twitter not only obstructed Rosa's claim in arbitration by failing to pay the fees mandated by JAMS, but Twitter has refused to arbitrate 891 pending arbitrations with JAMS, and any other pending arbitrations in jurisdictions other than California in direct violation of JAMS' directive to Twitter to pay the mandated fees per JAMS' Rules.  It is apparent that Twitter is engaging in bad faith by obstructing not only Rosa's attempt to arbitrate his claims, but 891 other former employers with pending arbitrations nationwide.  The Court should not allow Twitter to obstruct an employee's claim for arbitration, then compel the employee to return to the very same forum, which Twitter blatantly refuses to comply with.  Such distasteful tactics by Twitter should not be tolerated and the Court should find that Twitter waived its ability to compel Rosa to arbitration.

Consequently, Twitter's attempts to obstruct Rosa's claim for arbitration, including its failure to pay the arbitration filing fees, waives its right to compel arbitration.  As such, Defendants' Motion to Compel should be denied and this matter should be litigated in this Court.

## PROCEDURAL HISTORY

On December 13, 2021, Plaintiff was provided an offer letter to commence his employment, as VP, Information Technology, at Twitter, Inc. on January 24, 2022. See Certification of Alan Rosa ("Rosa Cert."), ¶ 2 and Exhibit A, Offer Letter dated December 13, 2021[1]. At this time, he was also directed to sign a Dispute Resolution Agreement, of which he could later opt out. See Rosa Cert., ¶ 3 and Exhibit B, Dispute Resolution Agreement dated December 13, 2021. Pursuant to the Offer Letter, Plaintiff was also obligated to sign an Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement") as a

---

[1] Plaintiff Alan Rosa's Certification in Support of Plaintiff's Opposition to the Motion to Dismiss of Defendants Elon Musk and Steve Davis and In Support of Cross-Motion To Transfer, with exhibits, was filed with Plaintiff's opposition to Defendants' Motion to Dismiss. Plaintiff hereby attaches his certification in support of Plaintiff's opposition to Defendants' Motion to Compel.  Both motions were filed and returnable on the same dates.

condition of his employment. See Rosa Cert., ¶ 4 and Exhibit C, Confidentiality Agreement dated December 13, 2021.

In accordance with the Dispute Resolution Agreement, Plaintiff filed a demand for arbitration against Defendants with JAMS on or about April 14, 2023. See Rosa Cert., ¶ 5 and Exhibit D. On or about May 4, 2023, Plaintiff submitted his initial payment to JAMS. See Rosa Cert., ¶ 6 and Exhibit E, Claimant's Filing Fee Receipt dated May 4, 2023. On May 10, 2023, JAMS forwarded the parties notice as follows:

> Upon review of the Demand [for Arbitration] and accompanying documents JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies.
>
> Please carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed.
>
> The Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing.
>
> Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once he or she is appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then renew the issue, taking the arbitrator's position into consideration, and will make a final determination.

See Rosa Cert., ¶ 7 and Exhibit F, May 10, 2023 JAMS Notice of Determination that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness Applies.

On May 30, 2023, the parties received a Notice of Commencement of Employment Arbitration from JAMS asking them to mutually agree upon an arbitrator. See Rosa Cert., ¶ 8 and Exhibit G, JAMS Notice of Commencement of Employment Arbitration dated May 30, 2023. The Notice set forth that "JAMS will administer the arbitration consistent with the JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness. According to this Policy,

-3-

the only fee an employee may be required to pay is $400 of the Filing Fee. All other costs, including the remainder of the Filing Fee, must be borne by the company. JAMS will also administer the case consistent with JAMS Cancellation/Continuance policy." See Rosa Cert., ¶ 9 and Exhibit G.

On June 6, 2023, Plaintiff's counsel emailed correspondence to Defendants' counsel requesting their consent to arbitrate the matter before Michael Young. See Rosa Cert., ¶ 10 and Exhibit H, Email Chain between Plaintiff's Counsel and Defendants' Counsel Consenting to Arbitration before Michael Young. On June 6, 2023, Sarah Nevins, JAMS Arbitration Practice Manager – East/Central, asked Defendants' counsel to confirm the choice of Michael Young as Arbitrator. See Rosa Cert., ¶ 11 and Exhibit H. Defendants' counsel, Kathryn Bonacorsi, Esq. responded that she confirmed. See Rosa Cert., ¶ 12 and Exhibit H.

On July 13, 2023, Victor Tran, JAMS Case Coordinator, requested that the parties acknowledge receipt of the deposit request and advise as to the payment status for the arbitration. See Rosa Cert., ¶ 13 and Exhibit I, Email correspondence regarding payment of arbitration fees. Defendants' counsel Daniel Koffman, Esq. then asked Mr. Tran to clarify whether the "invoice represents 50% of the applicable fees at this stage". See Rosa Cert., ¶ 14 and Exhibit I. Mr. Tran responded that "[i]t has been determined that the Employment Minimum Standards apply in this matter. As such, Twitter is responsible for all the arbitration fees with the exception of Claimant's portion of the filing fee. This invoice represents an initial retainer for the Arbitrator to begin working on the case." See Rosa Cert., ¶ 15 and Exhibit I.

On July 18, 2023, Mr. Koffman sent email correspondence to Plaintiff's counsel stating "Section 6 of your client's arbitration agreement with Twitter provides that, where (as here) applicable law does not require Twitter to pay all fees for the arbitration, the fees are to be apportioned between the parties. Consistent with this agreement, Twitter is not prepared to pay

more than half of the arbitrator fees. Do you agree to having JAMS issue invoices to each party for half the arbitrator fees?" <u>See</u> Rosa Cert., ¶ 16 and Exhibit I.

On July 18, 2023, Plaintiff's counsel Debra McGarvey, Esq. responded:

> Section 5 of the arbitration agreement requires that claims for arbitration be brought before JAMS, pursuant to the then-current JAMS Rules. JAMS has already determined that the Employment Minimum Standards apply in this matter because the arbitration agreement was a condition of employment. Section 6 of the agreement does not provide any language stating that it overrides any conflict with JAMS rules. As such, Twitter is responsible for all of the arbitration fees with the exception of Claimant's portion of the filing fee.

<u>See</u> Rosa Cert., ¶ 17 and Exhibit I.

On July 20, 2023, Mr. Koffman, on behalf of Defendants, continued to refuse to pay under JAMS Rules, stating:

> Debra – we disagree with your construction of the contract, which makes clear that your client must split the arbitration fees unless applicable law requires otherwise. And there is no applicable law that requires otherwise. Your reliance on JAMS Rules is misplaced, as JAMS Rules cannot alter the parties' substantive rights and responsibilities under the agreement they both signed. Under these circumstances, while Twitter is prepared to pay its half of the arbitration fees, it will not pay more than that.

<u>See</u> Rosa Cert., ¶ 18 and Exhibit I.

In response, Plaintiff's counsel Bruce L. Atkins, Esq. stated:

> We disagree with you as the agreement is crystal clear in section 5 that the then- current JAMS rules apply. JAMS has already determined that your client pays pursuant to their current rules as stated in the Victor Tran email below. There is no carveout of the JAMS rules in the agreement, therefore JAMS rules clearly apply to BOTH parties. Its your client's contract and therefore strictly construed as to any ambiguity.

5. States as follows:

> Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

See Rosa Cert., ¶ 19 and Exhibit I.

On July 21, 2023, John Graber, JAMS Case Manager stated:

> Noting below the language from July 18 but also noting; after the initial deposits are paid, the parties can discuss this issue directly with the arbitrator. Please let me know if any questions. Thank you.
>
> It has been determined that the Employment Minimum Standards apply in this matter. As such, Twitter is responsible for all the arbitration fees with the exception of Claimant's portion of the filing fee. This invoice represents an initial retainer for the Arbitrator to begin working on the case. Once we receive payment of the initial retainer, our office will schedule a preliminary conference to set the schedule of the arbitration.

See Rosa Cert., ¶ 20 and Exhibit I.

Mr. Koffman responded on July 31, 2023 stating as follows:

> Mr. Graber, Mr. Tran, and counsel – X Corp. is not prepared to pay more than half of the arbitration fees in this matter. The underlying contract and applicable law are clear that the parties divide the cost of any arbitration, and JAMS Rules cannot alter the parties' substantive rights and responsibilities under the agreement they both signed. Under these circumstances, while X Corp. is prepared to pay its half of the arbitration fees, it will not pay more than that.

See Rosa Cert., ¶ 21 and Exhibit I.

Mr. Graber then stated: "As mentioned, any issues regarding the fee split can be presented to the Arbitrator once we are ready to proceed- which will be once the $5,000 is paid by Respondent. Thank you." See Rosa Cert., ¶ 22 and Exhibit I.

Defendants did not make the payment contrary to JAMS Minimum Standards of Procedural Fairness, which their own Dispute Resolution Agreement stated applies. See Rosa Cert., ¶ 23. Mr. Graber advised that he would close the file soon if payment was not made. See Rosa Cert., ¶ 24 and Exhibit I. Defendants refused to pay their portion of the arbitration fees even though they would have later had the opportunity to dispute whether JAMS Minimum Standards of Procedural Fairness applied in this case, as set forth in the May 10, 2023 Notice. See Rosa Cert., ¶ 25 and Exhibit F. As a result of Defendants' non-payment, JAMS closed their arbitration file. See Rosa Cert., ¶ 26.

On December 5, 2023, Plaintiff filed his Complaint and Demand for Jury Trial in this matter. See Rosa Cert., ¶ 27 and Exhibit J, Complaint and Demand for Jury Trial filed on December 5, 2023 ("Dkt. No. 1"). On or about February 5, 2024, Plaintiff subsequently agreed to a stipulation with Defendants to an extension of time to answer, plead or otherwise respond to Plaintiff's Complaint by March 22, 2024. (Dkt. No. 6). On February 6, 2024, the Hon. Brian R. Martinotti, U.S.D.J., entered the Order granting the extension of time to answer, plead or otherwise respond to Plaintiff's Complaint by March 22, 2024. (Dkt. No. 7).

On March 22, 2024, despite refusing to comply with JAMS directive for payment in order to proceed with the Arbitration, Defendant Twitter filed the subject Motion to Compel Arbitration (Dkt. No. 9) and Defendants Elon Musk and Steve Davis simultaneously filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 8). Both motions are returnable on the same date.

## FACTUAL ALLEGATIONS

Plaintiff filed the instant Complaint against Defendants asserting claims for breach of contract and the duty of good faith and fair dealing, unlawful termination in violation of the

Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-2, et seq., common law

retaliation in violation of Pierce v. Ortho Pharmaceutical Group, 84 N.J. 58, (1980), violation of

New York Labor Law § 740, and violation of California Labor Code § 1102.5, wrongful termination

in violation of public policy, violation of the Federal WARN Act, 29 U.S.C. §§2101 et seq., and

violations of the California and New York WARN Acts.  The facts relevant to the pending motion

are set forth below.

      **A.**    **Per the Offer Letter, Twitter Mandated Rosa to Sign the DRA, and Rosa Could Only Opt-out After Signing It.**

On December 13, 2021, Twitter, Inc. provided Plaintiff with an offer letter to commence

employment by Twitter as its VP, Information Technology on January 24, 2022. See Rosa Cert.,

¶ 2 and Exhibit A. Plaintiff signed the offer letter on December 13, 2021. Twitter's Offer Letter

provided:

> **To accept this offer**, please initiate the authorization of your background check, and **sign and date this offer letter, and the other documents enclosed with this letter (including the** Confidentiality Agreement and **Dispute Resolution Agreement)** and return them via AdobeSign. **This offer will expire if the signed documents are not returned by** December 20, 2021, unless otherwise extended by the Company.

See Id.

On December 13, 2021, Plaintiff entered into the Dispute Resolution Agreement with

Twitter, which provided that it "applies to any dispute arising out of or related to Employee's

employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies

("Company") or termination of employment and survives after the employment relationship

terminates. See Rosa Cert., ¶ 3 and Exhibit B.

**B.**    **The DRA Requires Twitter to Pay All Costs Except the Initial Filing Fee Pursuant to JAMS Rules.**

Pursuant to Section 5 of the DRA, the parties agree to bring any claim in arbitration before JAMS, "pursuant to the then-current JAMS Rules".  See Rosa Cert., ¶ 3 and Exhibit B.  Pursuant to the Minimum Standards, an employee who brings an arbitration case to JAMS must pay an initial relatively nominal filing fee, but all other arbitration fees, including fees to pay the arbitrator, must be borne by the employer as follows:

> .. The only fee that an employee may be required to pay is the initial JAMS Case Management Fee.  **All other costs must be borne by the company**, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services.
>
> Id.

JAMS Rules include a provision stating that, whenever parties have provided for arbitration by JAMS, the parties shall be deemed to have incorporated JAMS Rules as part of their arbitration agreement.  See Rosa Cert., ¶ 7 and Exhibit F.  The Rules further provide that any other agreements the parties may make with respect to procedures for employment-related arbitrations must comport with the JAMS policy on Employment Arbitration Minimum Standards for Procedural Fairness ("JAMS Minimum Standards").  See Rosa Cert., ¶ 7 and Exhibit F.

**C.**    **Rosa Honors the DRA By Filing A Demand For Arbitration With JAMS.**

On or around December 6, 2023, Rosa was wrongfully terminated in retaliation for objecting to and refusing to engage in conduct he believed to be unlawful contrary to the instructions of Defendants and disclosing this to X Corp.'s Deputy General Counsel and Vice President, Legal. Complaint. (Dkt. No. 1 at ¶ 50). At all times Plaintiff's job performance was beyond satisfactory. (Dkt. No. 1 at ¶ 69). Plaintiff was terminated in an unexplainable fashion as

he did nothing wrong that would justify his termination and no reason was provided to Plaintiff explaining why he was being terminated. (Dkt. No. 1 at ¶ 70).

In accordance with the DRA, Rosa filed a Demand for Arbitration with JAMS on April 14, 2023. See Rosa Cert., ¶ 5 and Exhibit D. Plaintiff alleged, *inter alia*, the following:

- Defendants Musk and Davis were dismissive of the Twitter FTC Consent Decree and began cutting Twitter's products and services that supported and complied with the Twitter FTC Consent Decree. (Dkt. No 1 at ¶ 45). Plaintiff objected to these cuts as he had a reasonable belief that cutting these programs would prevent Twitter from complying with its obligations under the Twitter FTC Consent Decree Order. (Dkt. No 1 at ¶ 47).

- On or around November 21, 2022, Defendant Davis directed Plaintiff to shut down Salesforce, which is legal case software that enables Twitter to share details with law enforcement entities around the world regarding time-sensitive and important legal matters. (Dkt. No 1 at ¶ 48). Plaintiff objected to the direction to shut down Salesforce due to the dependency between the Legal Case Review platform and Salesforce as the immediate shutdown would violate the Digital Service Act's ("DSA") legal requirements and jurisdictional rules around the globe by compromising Twitter's inability to properly handle law enforcement inquiries. (Dkt. No 1 at ¶ 49).

- On or around the evening of December 1, 2022, Davis directed Plaintiff to cut the physical security budget by an additional 50% by midnight. This was done in hours, not days. (Dkt. No. 1 at ¶ 51). Plaintiff immediately objected to participating in such activity, as he had a reasonable belief that such an immediate budget cut, after already cutting the budget by 50%, would put the physical building at risk of violating a Court Order (explained Dkt. No. 1 infra at ¶31) and it posed a substantial danger to public safety. (Dkt. No. 1 at ¶ 52). The physical building, whose security he had to immediately cut, stored over 800 laptops and other electronic devices that were subject to litigation holds, per Court Orders, which required the Company to ensure that the physical data on the laptops and other electronic devices in the building were preserved and were not removed, destroyed, or altered in any way. (Dkt. No. 1 at ¶ 53).

- Plaintiff had a reasonable belief that quickly cutting the physical budget again, within hours, without new security measures in place would violate the litigation holds, per the Court Orders, as there would be no way to preserve the physical laptops and other electronic devices to ensure that they were not altered in any way. (Dkt. No. 1 at ¶ 54).

- Plaintiff also had a reasonable belief that cutting the physical budget again, without new security measures in place, posed a substantial and specific danger to public health and/or safety because there were numerous protestors at the physical building location. (Dkt. No. 1 at ¶ 55).

Rosa's Demand for Arbitration further alleged that Twitter advised Plaintiff, after his termination, that he would receive a severance package, his February 1st vesting compensation, bonus compensation, and two months of paid COBRA benefits, <u>as this was being provided to all other laid-off Company employees</u>. (Dkt. No. 1 at ¶ 60). Notably, a Tweep FAQ dated October 2022 began with a Tweet by Musk dated October 27, 2022 titled "Dear Twitter Advertisers". <u>See</u> Rosa Cert., at ¶ 31 and Exhibit L, Tweep FAQ dated October 2022. It then provided further information on general severance packages if a position is eliminated based on the purchase of Twitter by Defendant Musk. <u>See</u> Rosa Cert., at ¶ 32 and Exhibit L. The Tweep FAQ stated:

- Generally speaking, in the event of a position elimination, our current severance package includes a lump sum cash amount in exchange for signing a separation agreement; the package would include at least:
  - o Two months base salary or On Target Earnings for employees on the Sales Incentive Plan
  - o Pro-rated Performance Bonus Plan compensation at target
  - o A cash contribution for health care continuation.

<u>See</u> <u>Id.</u>

Thereafter on December 16, 2022, Twitter advised Plaintiff that his severance paperwork and severance package were being put on hold pending an investigation regarding his conduct during his employment. (Dkt. No. 1 at ¶ 61). Twitter never paid Plaintiff, along with thousands of other Twitter employees of their promised severance payments, leading to thousands of arbitration claims nationwide.

**D.** **<u>JAMS Directs Twitter to Pay Initial Invoice, Which JAMS Refuses to Do In Violation of JAMS Rules and the DRA.</u>**

On July 13, 2023, Victor Tran, JAMS Case Coordinator, requested that the parties acknowledge receipt of the deposit request and advise as to the payment status for the arbitration. <u>See</u> Rosa Cert., ¶ 13 and Exhibit I, Email correspondence regarding payment of arbitration fees. Defendants' counsel Daniel Koffman, Esq. then asked Mr. Tran to clarify whether the "invoice

-11-

represents 50% of the applicable fees at this stage". <u>See</u> Rosa Cert., ¶ 14 and Exhibit I. Mr. Tran

responded that "[i]t has been determined that the Employment Minimum Standards apply in this

matter. As such, Twitter is responsible for all the arbitration fees with the exception of Claimant's

portion of the filing fee. This invoice represents an initial retainer for the Arbitrator to begin

working on the case." <u>See</u> Rosa Cert., ¶ 15 and Exhibit I.

On July 18, 2023, Mr. Koffman sent email correspondence to Plaintiff's counsel stating

"Section 6 of your client's arbitration agreement with Twitter provides that, where (as here)

applicable law does not require Twitter to pay all fees for the arbitration, the fees are to be

apportioned between the parties. Consistent with this agreement, Twitter is not prepared to pay

more than half of the arbitrator fees. Do you agree to having JAMS issue invoices to each party

for half the arbitrator fees?" <u>See</u> Rosa Cert., ¶ 16 and Exhibit I.

On July 18, 2023, Plaintiff's counsel Debra McGarvey, Esq. responded:

> Section 5 of the arbitration agreement requires that claims
> for arbitration be brought before JAMS, pursuant to the then-current
> JAMS Rules. JAMS has already determined that the Employment
> Minimum Standards apply in this matter because the arbitration
> agreement was a condition of employment. Section 6 of the
> agreement does not provide any language stating that it overrides
> any conflict with JAMS rules. As such, Twitter is responsible for all
> of the arbitration fees with the exception of Claimant's portion of
> the filing fee.

<u>See</u> Rosa Cert., ¶ 17 and Exhibit I.

On July 20, 2023, Mr. Koffman, on behalf of Defendants, continued to refuse to pay under

JAMS Rules, stating:

> Debra – we disagree with your construction of the contract, which
> makes clear that your client must split the arbitration fees unless
> applicable law requires otherwise. And there is no applicable law
> that requires otherwise. Your reliance on JAMS Rules is misplaced,
> as JAMS Rules cannot alter the parties' substantive rights and
> responsibilities under the agreement they both signed. Under these

circumstances, while Twitter is prepared to pay its half of the arbitration fees, it will not pay more than that.

See Rosa Cert., ¶ 18 and Exhibit I.

In response, Plaintiff's counsel Bruce L. Atkins, Esq. stated:

We disagree with you as the agreement is crystal clear in section 5 that the then- current JAMS rules apply. JAMS has already determined that your client pays pursuant to their current rules as stated in the Victor Tran email below. There is no carveout of the JAMS rules in the agreement, therefore JAMS rules clearly apply to BOTH parties. Its your client's contract and therefore strictly construed as to any ambiguity.

5. States as follows:

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

See Rosa Cert., ¶ 19 and Exhibit I.

On July 21, 2023, John Graber, JAMS Case Manager, advised Twitter that after the initial deposits are paid, Twitter can raise the issue regarding fees with arbitrator:

Noting below the language from July 18 but also noting; after the initial deposits are paid, the parties can discuss this issue directly with the arbitrator. Please let me know if any questions. Thank you.

It has been determined that the Employment Minimum Standards apply in this matter. As such, Twitter is responsible for all the arbitration fees with the exception of Claimant's portion of the filing fee. This invoice represents an initial retainer for the Arbitrator to begin working on the case. Once we receive payment of the initial retainer, our office will schedule a preliminary conference to set the schedule of the arbitration.

See Rosa Cert., ¶ 20 and Exhibit I.

Mr. Koffman responded on July 31, 2023 stating as follows:

> Mr. Graber, Mr. Tran, and counsel – X Corp. is not prepared to pay more than half of the arbitration fees in this matter. The underlying contract and applicable law are clear that the parties divide the cost of any arbitration, and JAMS Rules cannot alter the parties' substantive rights and responsibilities under the agreement they both signed. Under these circumstances, while X Corp. is prepared to pay its half of the arbitration fees, it will not pay more than that.

See Rosa Cert., ¶ 21 and Exhibit I.

Mr. Graber then stated: "As mentioned, any issues regarding the fee split can be presented to the Arbitrator once we are ready to proceed- **which will be once the $5,000 is paid by Respondent**. Thank you." See Rosa Cert., ¶ 22 and Exhibit I.

Defendants did not make the payment contrary to JAMS Minimum Standards of Procedural Fairness, which their own Dispute Resolution Agreement stated applies. See Rosa Cert., ¶ 23. Twitter did not make any payment whatsoever, not even the 50% it contends it was required to pay. See Rosa Cert., ¶ 25 and Exhibit F. Mr. Graber advised that he would close the file soon if payment was not made. See Rosa Cert., ¶ 24. Defendants refused to pay their portion of the arbitration fees even though they would have later had the opportunity to dispute whether JAMS Minimum Standards of Procedural Fairness applied in this case, as set forth in the May 10, 2023 Notice. See Rosa Cert., ¶ 25 and Exhibit F. As a result of Defendants' non-payment, JAMS closed their arbitration file. See Rosa Cert., ¶ 26.

### E.   Twitter Is Acting in Bad Faith as Twitter Refuses to Proceed With 891 Arbitrations and Any Arbitration Outside the State of California.

On June 2, 2023, Twitter submitted a letter to JAMS' General Counsel, Sheri, Eisner, requesting that all arbitrations in certain jurisdictions be split equally between the parties. See

McGarvey Cert., Exhibit M.  In response, JAMS advised that Twitter must pay the fees pursuant

to JAMS Minimum Standards:

> JAMS notified the parties at the outset of these matters that the JAMS Policy on
> Employment Arbitrations Minimum Standards of Procedural Fairness ("Minimum
> Standards" or "Standards") applies.  The Minimum Standards reflects JAMS
> administrative policy to administer employment arbitrations under the protections
> provided in the Minimum Standards.  Application of the Standards is separate and
> apart from the protections that may apply in any given jurisdiction, and JAMS
> applies the Standards nationwide.

> Id.

JAMS advised that the dispute regarding fees should be direct to the arbitrator in each case:

> As our notice in each case advised, any further issues about whether the Minimum
> Standards apply in a given case should be directed to the arbitrator in the case.
> After hearings from the parties, if the arbitration believes JAMS should revisit the
> issue, the arbitration may advise JAMS accordingly.  JAMS will then review the
> issue, taking the arbitrator's position into consideration, and will make a final
> determination.

> Id.

JAMS further advised Twitter that if Twitter declines to proceed under JAMS Minimum

Standards, JAMS will decline to administer the arbitration. Id.

On June 28, 2023, Twitter sent another letter to JAMS informing it that Twitter would

refuse to proceed with arbitrations in most states outside of California and attached a list of 891

arbitrations in which Twitter was refusing to proceed with arbitration.  See McGarvey Cert.,

Exhibit N.

**F.**   **Rosa Properly Filed This Complaint As Twitter Waived Its Right to Arbitrate By
Refusing to Comply with the JAMS Rules and the DRA.**

As a result of Defendants' obstruction of the arbitration process, the Plaintiff was forced to

file the within Complaint on December 5, 2023 in the United States District Court. See McGarvey

Cert., Exhibit O.  Plaintiff's Complaint alleges seeks legal and equitable relief against Defendants

for (1) Breach of Contract and Breach of Duty of Good Faith and Fair Dealing; (2) unlawful termination in violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. §34:19-1 et seq.; (3) common law retaliation; (4) violations of New York Labor Law §740 and California Labor Code §1102.5; (5) wrongful termination in violation of public policy; and (6) violations of the federal WARN Act, 29 U.S.C. §§2101 et seq., the California WARN Act, Cal. Lab. Code §1400 et seq. and New York WARN Act, N.Y. Lab. Law §§ 860 et seq. Id.

Plaintiff's Complaint further alleges Twitter's obstruction of the arbitration process in that JAMS determined that the employment Minimum Standards apply under the JAMS rule and further determined that Twitter was responsible for all the arbitration fees with the exception of Claimant's portion of the filing fee. Id. at ¶7. Yet, Twitter has refused to pay its portion of the arbitration fees despite being ordered by JAMS to do so. Id. at ¶8. On August 21, 2023, September 20, 203, and December 4, 20023, JAMS advised the parties that if the fee is not paid, the file will be closed. Id. at ¶9. Defendants never responded to these emails and never paid their portion of the arbitration fee. Id. at ¶10.

Further, as set forth in Plaintiff's Complaint, when a party fails to advance required fees for an arbitration to commence it is considered an obstruction of the arbitration process, which disentitles said party from enforcing an arbitration clause in a contract. *Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 U.S. Dist. LEXIS 55369, *10 (D.N.J. Mar. 22, 2021) (internal citations omitted).

## **LEGAL ARGUMENT**

### **I.   THE COURT SHOULD DENY DEFENDANT'S MOTION BECAUSE TWITTER WAIVED ITS RIGHT TO COMPEL ARBITRATION WHEN IT REFUSED TO FOLLOW JAMS RULES.**

This Court should issue an order denying Twitter's motion to compel arbitration. Twitter is attempting to distract the Court from its dilatory tactics by arguing its underlying claim, even

-16-

though it refuses to comply with the JAMS Rules, as required by the DRA. By refusing to pay the arbitration fees in violation of JAMS rules and the DRA, <u>even after</u> the JAMS case manager advised Twitter that it had to pay the fees and bring the fee dispute to the arbitrator, Twitter refused to pay the arbitration fees and obstructed the arbitration process. Therefore, Twitter waived its right to compel arbitration and Defendant's motion should be denied.

### A. THE DRA REQUIRES TWITTER TO PAY ALL COSTS EXCEPT THE INITIAL FILING FEE PURSUANT TO JAMS RULES, WHICH TWITTER REFUSES TO DO.

Employment arbitration agreements must be enforced according to the terms specified in the agreement unless they are unconscionable or otherwise invalid. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Edwards v. Hovensa*, LLC, 497 F.3d 355, 363 (3d Cir. 2007); *Styczynski v. MarketSource*, Inc., 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018). The terms that must be enforced include the arbitrator the parties choose and the rules that will govern the arbitration. Epic Sys. Corp. v. Lewis, 584 U.S. 497, 506 (2018). Under the Federal Arbitration Act, courts are required to "enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." <u>Id.</u> (emphasis in original); *Styczynski v. MarketSource*, Inc., 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018) ("an arbitration agreement, even in an employment contract, must be enforced. . . . even if the agreement goes so far as to specify an individual arbitrator or the rules that will govern the arbitration.").

Here, the DRA, which Twitter drafted, requires that the arbitration proceeding between Rosa and Twitter be administered before JAM, "**pursuant to the then-current JAMS Rules**". <u>See</u> Rosa Cert., ¶ 3 and Exhibit B. The JAMS Rules include a provision stating that, whenever parties have provided for arbitration by JAMS, the parties shall be deemed to have incorporated JAMS Rules as part of their arbitration agreement. The JAMS Rules further require that the

-17-

arbitration comply with JAMS Minimum Standards, which requires Rosa, the claimant, to pay an

initial relatively nominal filing fee, but all other arbitration fees, including fees to pay the arbitrator,

must be borne by Twitter, the employer, as follows:

> .. The only fee that an employee may be required to pay is the initial
> JAMS Case Management Fee. **All other costs must be borne by
> the company**, including any additional JAMS Case Management
> Fees and all professional fees for the arbitrator's services.

> Id.

Moreover, Twitter continued to obstruct the arbitration process by refusing to pay the

mandated employer arbitration fees even after JAMS directed Twitter to pay the fees. Specifically,

JAMS made the determination that Employment Minimum Standards apply in the present matter.

See Exhibit I. John Graber, JAMS Case Manager, directed Defendants to pay the arbitration fees

with the exception of the Claimant's portion of the filing fee, JAMS Policy on Employment

Arbitration Minimum Standards of Procedural Fairness apply. Id. "It is well-established that

JAMS, when 'conducting' an employment arbitration, applies certain minimal procedural

safeguards contained in the EMS. Under those EMS safeguards, the employer is to bear costs. The

application of the EMS is thus part of the framework for 'conduct[ing]' any employment

arbitration at JAMS. The invocation of JAMS and its Comprehensive Rules must be understood

within that framework." *Lang v. PTC, Inc.*, No. CV2104451KMESK, 2021 WL 5277190, at *5

(D.N.J. Nov. 12, 2021).

Despite knowing that JAMS Rules require employers to pay the full arbitrator's fees in

employment cases under the Minimum Standards, Twitter refused to pay the arbitration fees.

While Twitter continues to argue that JAMS' policy should not apply and that fees should be

equally apportioned, Twitter disregards the crucial fact that Twitter, not Rosa, selected JAMS as

the entity to oversee the arbitration and thus knew that JAMS' Minimum Standards would apply. Likewise, it was Twitter, not ROSA, that drafted the language in the DRA stating that the arbitrations would be conducted, **"pursuant to the then-current JAMS Rules"**. As such, Twitter has no standing to dispute JAMS' policy and refuse to pay the arbitrator's fees, especially after JAMS directed Twitter to pay the arbitration fees and Mr. Graber specifically advised Defendants that fee dispute issue should be brought before the arbitrator once the initial deposits are paid. See Exhibit I.

Even more appalling, Twitter continued to obstruct not only Rosa's arbitrations, but at least 891 other arbitrations, despite being directed by Sheri Eisner, JAMS General Counsel, in June 2023 that per JAMS Rules, to pay the arbitration costs in its pending arbitrations, and then bring the fee dispute to the arbitrator to resolve. See McGarvey Cert., Exhibit M. Rather than complying, Twitter ignored JAMS directive, and instead advised JAMS that it declines to proceed" with arbitrations, thus refusing to comply with arbitrations filed with JAM in any other jurisdiction other California. See McGarvey Cert., Exhibit N.

As such, it is apparent that Twitter refuses to comply with JAMS Rules and will not pay its arbitration fees in 891 arbitrations in order decline to proceed with the pending arbitrations, as it stated in its June 28, 2023 letter. This is the very definition of obstructing arbitration.

## B. TWITTER, NOT ROSA SELECTED JAMS AND BY FAILING TO PAY ITS PORTION OF THE ARBITRATION FEES IN COMPLIANCE WITH JAMS' POLICY, TWITTER WAIVED ITS RIGHT TO COMPEL ARBITRATION.

A party that fails to comply with arbitration rules, including paying the required fees, cannot enforce or compel arbitration. Failure to pay the required arbitration fees amounts to a default and a waiver of the right to compel arbitration. *Heisman v. Wyndham Vacation Resorts, Inc.*, No. CV2011480KMJBC, 2021 WL 1138125, *3 (D.N.J. Mar. 22, 2021) (holding that

defendant's failure to comply with arbitration rules consisted of a default and waiver to compel arbitration); *Page v. GPB Cars 12*, LLC, No. CV 19-11513, 2019 WL 5258164 (D.N.J. Oct. 17, 2019).

Here, Twitter disputes JAMS' policy, but ignores that it was Twitter, not Rosa, that selected JAMS, and thus, agreed to abide by JAMS's Rules. While Rosa has complied with JAMS rules as he paid the initial filing fee, Twitter has refused to pay any filing fees, even the 50% portion that Twitter admits it should pay. See Rosa Cert., Exhibit E.   Twitter attempts to distract the Court by arguing that JAMS Minimum Standards should not apply, but Twitter provides no explanation why it will not simply pay the arbitration fees and bring the fee dispute before the arbitrator as directed by JAMS.  It is especially telling that in response to JAM's directive to Twitter to pay the arbitration invoices and bring the issue before the arbitrator in its pending arbitrations, Twitter advised JAMS that it will not arbitrate the 891 arbitrations pending with JAMS.  See McGarvey Cert., Exhibit N.  Twitter should not be permitted to seek to compel arbitration with JAMS, while simultaneously refusing to comply with JAMS's Rules.

Moreover, Twitter's claim that the DRA was not a condition of employment is misleading. Per Rosa's December 13, 2021 Offer Letter, Rosa's employment was conditioned upon him signing and executing Confidentiality Agreement and Dispute Resolution Agreement as follows:

> **To accept this offer**, please initiate the authorization of your background check, and **sign and date this offer letter, and the other documents enclosed with this letter (including the** Confidentiality Agreement and **Dispute Resolution Agreement)** and return them via AdobeSign. **This offer will expire if the signed documents are not returned by** December 20, 2021, unless otherwise extended by the Company.
>
> See Exhibit A.

Further, the Offer Letter specifically advised Rosa that if he did not sign the Dispute Resolution Agreement by a date certain, the offer of employment would be withdrawn:

> **This offer will expire if the signed documents are not returned** by December 20, 2021, unless otherwise extended by the Company.

> See <u>Id.</u>

While Plaintiff could attempt to opt-out of the agreement <u>after</u> he signed the DRA, his employment was first conditioned upon him executing the DRA. Thus, JAMS will arbitrate Rosa's claim "**only** if the proceeding complies with the Minimum Standards of Procedural Fairness for Employment Arbitration", which Twitter refuses to comply.

Nevertheless, Twitter's underlying arguments, provide no justification for Twitter's failure to comply with JAMS Rules and directives and obstructing the arbitration process, thus waiving its right to compel arbitration.

### C. TWITTER WAIVED ITS RIGHT TO ARBITRATE BY FAILING TO PAY THE ARBITRATION FEES AS MANDATED BY JAMS.

Once an arbitration is dismissed and the right to arbitrate is waived, a party cannot compel arbitration. *Hernandez v. MicroBilt Corp.*, 88 F.4th 215 (3d Cir. 2023) (affirming the District Court's order denying defendant's motion to compel arbitration). Courts have denied motions to compel arbitration after a party failed to pay the required arbitration fees. *Passion for Restaurants, Inc. v. Villa Pizza, LLC*, No. CV2015790KSHCLW, 2022 WL 18024209 (D.N.J. Dec. 30, 2022), at *4, *6 (denying the plaintiff's motion to compel arbitration after defendant failed to pay its half of the arbitration fees and the arbitration was dismissed); *Heisman v. Wyndham Vacation Resorts, Inc.*, No. CV2011480KMJBC, 2021 WL 1138125 (D.N.J. Mar. 22, 2021), at * 3, *5 (denying defendant's motion to compel arbitration due to defendant's failure to comply with the AAA's arbitration policies).

"The New Jersey Supreme Court has held that obstruction of the arbitration process disentitles a party to enforce an arbitration clause. In particular, a party's 'failure to advance required fees that results in the dismissal of the arbitration claim . . . amounts to a material breach,' relieving the non-breaching party of its obligation to arbitrate." (*quoting Roach v. BM Motoring, LLC*, 155 A.3d 985, 995 (N.J. 2017); see also *Page v. GPB Cars 12, LLC*, No. CV 19-11513, 2019 WL 5258164, at *3¬–4 (D.N.J. Oct. 17, 2019). *Heisman v. Wyndham Vacation Resorts, Inc.*, No. CV2011480KMJBC, 2021 WL 1138125 (D.N.J. Mar. 22, 2021), at *4.

Here, Twitter's refusal to pay the arbitration fees waives it right to compel Rosa to arbitration. Twitter's claim that "it was ready and willing to pay its share of the arbitration initiation fees" is disingenuous as Twitter, a billion-dollar company, failed to pay any filing fees, even the 50% portion that Twitter admits it should pay. Twitter's refusal to simply comply with JAMS' directives and pay the initial filing fee so the fee dispute could be brought before the arbitrator reflects Twitter's intent to obstruct the arbitration process. Twitter's representation to this Court that it was "willing" to proceed to arbitration, is belied by Twitter's own actions whereas after forcing 891 claims to arbitration, Twitter notified JAMS that it would decline to proceed to arbitrate those claims, resulting in its dismissal. See McGarvey Cert., Exhibit N.

The caselaw set forth above is clear that a party's obstructionist behavior, including failure to pay the filing fees, waives its right to compel arbitration. Contrary to Twitter's argument, *Heisman v. Wyndham Vacation Resorts, Inc.*, No. CV2011480KMJBC, 2021 WL 1138125 (D.N.J. Mar. 22, 2021) is not distinguishable, but rather similar to the present case. The *Heisman* Court held that the employer could not compel arbitration when they obstruct the arbitration process. Id. at *10 *quoting Roach v. BM Motoring, LLC*, 155 A.3d 985, 995 (N.J. 2017); *see also Page v. GPB Cars 12, LLC*, No. CV 19-11513, 2019 WL 5258164, at *3–4 (D.N.J. Oct. 17, 2019). The

employer's failure to follow the arbitration rules amounted to a waiver of the right to compel arbitration. Id. at *7. In this case, the arbitration agreement between Plaintiff and Twitter requires that claims for arbitration be brought before JAMS, pursuant to the then-current JAMS rules. See Rosa Cert., ¶ 3 and Exhibit B.  JAMS determined that the "Employment Minimum Standards" apply, meaning the Plaintiff cannot contribute more than $400 towards the total cost of arbitration. See Rosa Cert., ¶ 9, 15 and Exhibit G, Exhibit I. Twitter then refused to pay the balance for the arbitration, even giving the warning that the arbitration would be closed if the arbitration commission was not paid. See Rosa Cert., ¶ 23-24 and Exhibit I.  Contrary to Twitter's contentions, the Plaintiff is the only party that attempted to adhere to the arbitration agreement and JAMS rules, and the analysis in Heisman case directly parallels the case at bar.

Notably, Twitter has not found one case, with similar facts to the present matter, to support its argument that Twitter's obstructionist tactics resulted in its waiver of the right to arbitrate.  The case cited by Defendants, *Weber v. X Corp.*, No. 23-cv-233, 2024 WL 470255 (E.D. Wash. Jan. 8, 2024) is not binding on this Court and distinguishable from the present matter because the plaintiff in Weber, unlike Rosa, failed to file Demand for Arbitration.  Plaintiff is not arguing that Twitter waived its right to arbitrate because it disagrees with the applicability of certain JAMS Rules, rather, Twitter waived its right to arbitrate because it is refusing to comply with JAMS Rules, refusing to pay the mandated fees and advance the fee dispute to the arbitrator, and advising JAMS, the forum that Twitter selected, that it refuses to arbitrate 891 pending arbitrations, and any other pending arbitrations in jurisdictions other than California.  See McGarvey Cert., Exhibit N.

It is apparent that Twitter is forcing former employers to bring their claims to arbitration, then attempting to obstruct the arbitration process.  Based on Twitter's actions, specifically, its refusal to pay the mandated arbitration fees directed by JAMS in Rosa's matter, along with the

other 891 pending arbitrations, Twitter has waived its right to compel arbitration.

**D.      The Court Should Resolve This Dispute Because Twitter Waived Its Right to Arbitrate.**

Rosa is complying with JAMS Rules by bringing this matter before this court after Twitter failed to pay the required arbitration fees and waived its right to arbitrate.

A party may bring claims to court after the chosen arbitrator declines to administer the claims. *Hernandez v. MicroBilt Corp.*, 88 F.4th 215, 220 (3d Cir. 2023). Multiple courts have held that a plaintiff may bring claims to court after an arbitrator dismisses the arbitration and declines to administer the claims. *See Greco v. Uber Techs., Inc.*, No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *1, 2020 U.S. Dist. LEXIS 161510, at *2 (N.D. Cal. Sept. 3, 2020) (allowing the plaintiff to bring the claims to court because the defendant failed to pay the arbitration fees and the arbitrator declined to administer the claim); *Waters v. Vroom Inc.,* No. 22-cv-1191 TWR (AGS), 2023 WL 187577, at *1, 2023 U.S. Dist. LEXIS 7252, at *1 (S.D. Cal. Jan. 13, 2023); *Forby v. One Techs.*, LP, 616 F. Supp. 3d 588, 591, 602 (N.D. Tex. 2022).

In *Hernandez v. MicroBilt Corp.*, 88 F.4th 215 (3d Cir. 2023) the plaintiff and defendant had an arbitration agreement under AAA rules. Id. at 215-16.  AAA declined to administer the case because the defendant failed to comply with AAA rules. Id. at 217. The Third Circuit found that it "lack[ed] the authority to compel arbitration" because the plaintiff complied with all AAA rules. Id. at 215, 221.

Moreover, several courts have allowed plaintiffs to return to court, despite general agreements to arbitrate. In *Greco v. Uber Techs., Inc.*, for example, the parties agreed "that any dispute, claim or controversy ... will be settled by binding arbitration." No. 4:20-cv-02698-YGR, 2020 WL 5628966, at *1, 2020 U.S. Dist. LEXIS 161510, at *2 (N.D. Cal. Sept. 3, 2020) (internal quotation marks omitted). But the AAA declined to administer the plaintiff's claim because the

-24-

defendant failed to pay its fees, and the plaintiff returned to court under Rule 1(d). Id. at *1–2, 2020 U.S. Dist. LEXIS 161510 at *4. The court did not compel the plaintiff to return to arbitration, despite the parties' general agreement to arbitrate. Id. at *4, 2020 U.S. Dist. LEXIS 161510 at *12; *see also Waters v. Vroom Inc.,* No. 22-cv-1191 TWR (AGS), 2023 WL 187577, at *1, 2023 U.S. Dist. LEXIS 7252, at *1 (S.D. Cal. Jan. 13, 2023) (denying motion to compel and allowing the plaintiff to proceed in court, despite the parties' agreement to "resolve any and all disputes and claims" in arbitration); *Forby v. One Techs.*, LP, 616 F. Supp. 3d 588, 591, 602 (N.D. Tex. 2022) (denying motion to compel after plaintiff returned to court under Rule 1(d), despite a general agreement that all claims would be "resolved" in arbitration)." *Id.* at 220.

Here, Twitter is forcing former employers to bring their claims to arbitration, then attempting to obstruct the arbitration process by refusing to comply with JAMS Rules and refusing to pay the mandated arbitration fees.  The Court should not allow such distasteful tactics. Twitter's obstructionist tactics reflect its unwillingness to arbitrate, resulted in its waiver of the right to arbitrate.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendants' Motion to Compel and allow this matter to proceed in this Court in the interest of justice.

We thank the Court for its courtesies and consideration of this matter.

**DEUTSCH ATKINS & KLEINFELDT, PC**
*Attorneys for Plaintiff Alan Rosa*

By:  */s/ Debra McGarvey*
      Debra M. McGarvey, Esq.

**DEUTSCH ATKINS & KLEINFELDT, PC**
21 Main Street, Court Plaza South, Suite 352
Hackensack, NJ 07601
Tel: (201)-498-0900
E-mail: dMcGarvey@deutschatkins.com
*Attorneys for Plaintiff, Alan Rosa*

Dated: April 22, 2023