UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN ROSA,<br><br>    Plaintiffs,<br><br>vs.<br><br>X CORP.; X HOLDINGS CORP.; ELON MUSK; STEVE DAVIS; JOHN DOES 1-10 and ABC CORPS. 1-10,<br><br>    Defendants. | Hon. Brian R. Martinotti<br>Case No. 2:23-cv-22908-BRM-AME<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion Return Date:<br><br>**CERTIFICATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS ELON MUSK AND STEVE DAVIS AND IN SUPPORT OF CROSS-MOTION TO TRANSFER** |

I, Alan Rosa, of full age, hereby certify as follows:

1. I am the Plaintiff in this matter and was formerly employed by Defendants X Corp; X Holdings Corp., Elon Musk and Steve Davis.

2. On December 13, 2021, I was provided an offer letter which was addressed to me at my residence in New Jersey to commence my employment at Twitter, Inc. on January 24, 2022. Attached to this Certification as **Exhibit A** is a true and accurate copy of the Offer Letter dated December 13, 2021.

3. At the time of receiving my offer letter, I was directed to sign a Dispute Resolution Agreement, which I could later opt out of. Attached to this Certification as **Exhibit B** is a true and accurate copy of the Dispute Resolution Agreement.

4. Pursuant to the Offer Letter, I was also obligated to sign an Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement") as a condition of my employment. Attached to this Certification as **Exhibit C** is a true and accurate copy of the Confidentiality Agreement.

5. In accordance with my Dispute Resolution Agreement, I filed a Demand for Arbitration with Judicial Arbitration and Mediation Services ("JAMS") Arbitration Association New York Office against Defendants X Corp; X Holdings Corp., Elon Musk and Steve Davis (collectively, "Defendants"). Attached to this Certification as **Exhibit D** is a true and accurate copy of the Demand for Arbitration filed with JAMS against Defendants on April 14, 2023.

6. On or about May 4, 2023, I submitted my initial payment to JAMS. Attached to this Certification as **Exhibit E** is a true and accurate copy Claimant's Filing Fee Receipt dated May 4, 2023.

7. On May 10, 2023, JAMS forwarded the parties notice as follows:

> Upon review of the Demand [for Arbitration] and accompanying documents JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies.
>
> Please carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed.
>
> The Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing.
>
> Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once he or she is appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then renew the issue, taking the arbitrator's position into consideration, and will make a final determination.

Attached to this Certification as **Exhibit F** is a true and accurate copy of the May 10, 2023 JAMS Notice of Determination that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness Applies.

8. On May 30, 2023, the parties received a Notice of Commencement of Employment Arbitration from JAMS asking them to mutually agree upon an arbitrator. Attached to this

Certification as **Exhibit G** is a true and accurate copy of the JAMS Notice of Commencement of Employment Arbitration dated May 30, 2023.

9. The Notice set forth that "JAMS will administer the arbitration consistent with the JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness. According to this Policy, the only fee an employee may be required to pay is $400 of the Filing Fee. All other costs, including the remainder of the Filing Fee, must be borne by the company. JAMS will also administer the case consistent with JAMS Cancellation/Continuance policy." See Exhibit G.

10. On June 6, 2023, my counsel emailed correspondence to Defendants' counsel requesting their consent to arbitrate the matter before Michael Young. Attached to this Certification as **Exhibit H** is a true and accurate copy of the Email Chain between my counsel and Defendants' counsel consenting to Arbitration with Michael Young.

11. On June 6, 2023, Sarah Nevins, JAMS Arbitration Practice Manager – East/Central, asked Defendants' counsel to confirm the choice of Michael Young as Arbitrator. See Exhibit H.

12. Defendants' counsel, Kathryn Bonacorsi, Esq. responded that she confirmed. See Exhibit H.

13. On July 13, 2023, Victor Tran, JAMS Case Coordinator, requested that the parties acknowledge receipt of the deposit request and advise as to the payment status for the arbitration. Attached to this Certification as **Exhibit I** is a true and accurate copy of the email correspondence regarding payment of arbitration fees.

14. Defendants' counsel Daniel Koffman, Esq. then asked Mr. Tran to clarify whether the "invoice represents 50% of the applicable fees at this stage". See Exhibit I.

15. Mr. Tran responded that "[i]t has been determined that the Employment Minimum Standards apply in this matter. As such, Twitter is responsible for all the arbitration fees with the

3

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

exception of Claimant's portion of the filing fee. This invoice represents an initial retainer for the Arbitrator to begin working on the case." See Exhibit I.

16. On July 18, 2023, Mr. Koffman sent email correspondence to my counsel stating "Section 6 of your client's arbitration agreement with Twitter provides that, where (as here) applicable law does not require Twitter to pay all fees for the arbitration, the fees are to be apportioned between the parties. Consistent with this agreement, Twitter is not prepared to pay more than half of the arbitrator fees. Do you agree to having JAMS issue invoices to each party for half the arbitrator fees?" See Exhibit I.

17. On July 18, 2023, my counsel Debra McGarvey, Esq. responded:

> Section 5 of the arbitration agreement requires that claims for arbitration be brought before JAMS, pursuant to the then-current JAMS Rules. JAMS has already determined that the Employment Minimum Standards apply in this matter because the arbitration agreement was a condition of employment. Section 6 of the agreement does not provide any language stating that it overrides any conflict with JAMS rules. As such, Twitter is responsible for all of the arbitration fees with the exception of Claimant's portion of the filing fee.

See Exhibit I.

18. On July 20, 2023, Mr. Koffman, on behalf of Defendants, continued to refuse to pay under JAMS Rules, stating:

> Debra – we disagree with your construction of the contract, which makes clear that your client must split the arbitration fees unless applicable law requires otherwise. And there is no applicable law that requires otherwise. Your reliance on JAMS Rules is misplaced, as JAMS Rules cannot alter the parties' substantive rights and responsibilities under the agreement they both signed. Under these circumstances, while Twitter is prepared to pay its half of the arbitration fees, it will not pay more than that.

See Exhibit I.

19. In response, my counsel Bruce L. Atkins, Esq. stated:

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

>We disagree with you as the agreement is crystal clear in section 5 that the then- current JAMS rules apply. JAMS has already determined that your client pays pursuant to their current rules as stated in the Victor Tran email below. There is no carveout of the JAMS rules in the agreement, therefore JAMS rules clearly apply to BOTH parties. Its your client's contract and therefore strictly construed as to any ambiguity.
>
>5. States as follows:
>
>Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

<u>See</u> Exhibit I.

20. On July 21, 2023, John Graber, JAMS Case Manager stated:

>Noting below the language from July 18 but also noting; after the initial deposits are paid, the parties can discuss this issue directly with the arbitrator. Please let me know if any questions. Thank you.
>
>It has been determined that the Employment Minimum Standards apply in this matter. As such, Twitter is responsible for all the arbitration fees with the exception of Claimant's portion of the filing fee. This invoice represents an initial retainer for the Arbitrator to begin working on the case. Once we receive payment of the initial retainer, our office will schedule a preliminary conference to set the schedule of the arbitration.

<u>See</u> Exhibit I.

21. Mr. Koffman responded on July 31, 2023 stating as follows:

>Mr. Graber, Mr. Tran, and counsel – X Corp. is not prepared to pay more than half of the arbitration fees in this matter. The underlying contract and applicable law are clear that the parties divide the cost of any arbitration, and JAMS Rules cannot alter the parties' substantive rights and responsibilities under the agreement they both

5

signed. Under these circumstances, while X Corp. is prepared to pay its half of the arbitration fees, it will not pay more than that.

See Exhibit I.

22. Mr. Graber then stated: "As mentioned, any issues regarding the fee split can be presented to the Arbitrator once we are ready to proceed- which will be once the $5,000 is paid by Respondent. Thank you. See Exhibit I.

23. Defendants did not make the payment contrary to JAMS Minimum Standards of Procedural Fairness, which their own Dispute Resolution Agreement stated applies.

24. Mr. Graber advised that he would close the file soon if payment was not made. See Exhibit I.

25. Defendants refused to pay their portion of the arbitration fees even though they would have later had the opportunity to dispute whether JAMS Minimum Standards of Procedural Fairness applied in this case, as set forth in the May 10, 2023 Notice. See Exhibit F.

26. As a result of Defendants' non-payment, JAMS closed their arbitration file.

27. On December 5, 2023, I filed my Complaint and Demand for Jury Trial in this matter. (Dkt. No. 1). Attached to this Certification as Exhibit J is a true and accurate copy of the Complaint filed in this action ("Dkt No. 1").

28. As set forth in my Complaint, I was terminated in retaliation for objecting to the activities of Defendants I reasonably believed to be unlawful. (Dkt. No. 1 at ¶ 59).

29. Twitter advised me, after my termination, that I would receive a severance package, my February 1st vesting compensation, bonus compensation, and two months of paid COBRA benefits, as this was being provided to all other laid-off Company employees. (Dkt. No. 1 at ¶ 60). Thereafter on December 16, 2022, Twitter advised me that my severance paperwork and severance package were being put on hold pending an investigation regarding his conduct during his

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

employment. (Dkt. No. 1 at ¶ 61).

30. Notably, it was only after I objected and disclosed conduct by Musk that I deemed to be illegal following Musk's purchase of Twitter, Defendants, with Musk and Davis at the helm, initiated a frivolous investigation of me. Attached to this Certification as **Exhibit K** is a true and accurate copy of Email Correspondence between Plaintiff and Katie Marcotte (Snodgrass) dated December 21, 2022 regarding the investigation of Plaintiff.

31. While Defendants never provided a report of the findings of their investigation, it is important to note that a Tweep FAQ dated October 2022 began with a Tweet by Musk dated October 27, 2022 titled "Dear Twitter Advertisers". Attached to this Certification as **Exhibit L** is a true and accurate copy of the Tweep FAQ dated October 2022.

32. The Tweep provided further information on general severance packages if a position is eliminated based on the purchase of Twitter by Defendant Musk. See Id. The Tweep FAQ stated:

- Generally speaking, in the event of a position elimination, our current severance package includes a lump sum cash amount in exchange for signing a separation agreement; the package would include at least:
    o Two months base salary or On Target Earnings for employees on the Sales Incentive Plan
    o Pro-rated Performance Bonus Plan compensation at target
    o A cash contribution for health care continuation.

See Id.

33. I was assured that at the close of the investigation if the allegations are unsubstantiated, he would receive an "opt out severance agreement discussed – in exchange for a signed release of claims, [he would] receive 3 months of pay, benefit for 2 months, and payout of his February 1st vest." See Exhibit K.

34. I never received the general severance package in accordance with the October

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

Tweep FAQ. I was never advised as to the nature of, nor the outcome of the investigation he was told was initiated, nor was he interviewed regarding same, despite his many inquiries to the Company. (Dkt. No. 1 at ¶ 62).

35. This was clearly further retaliation against me for my whistleblowing activity.

**Jurisdictional Facts**

36. I am a resident of New Jersey and was hired by Twitter and commenced employment as its VP, Information Technology on January 24, 2022. Twitter provided me an Offer Letter on December 13, 2021 which was addressed to me at my New Jersey residence. See Exhibit A.

37. All my pay stubs and W-2s were addressed to my home in New Jersey.

38. Pursuant to the offer letter, I was obligated to sign an Employee Invention Assignment and Confidentiality Agreement (the "Confidentiality Agreement"). See Exhibit A.

39. The Confidentiality Agreement which was a condition of my employment specifically provided that it was governed by the laws of the state in which I reside, which is New Jersey. See Exhibit C.

40. I was also obligated to sign the Dispute Resolution Agreement as part of my employment, which I could later opt out of 30 days later. See Exhibit B.

41. Pursuant to the terms of Dispute Resolution Agreement, it applies to "any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies or termination of employment. It can only be revoked or modified by a writing, signed by both [Plaintiff] and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement." See Exhibit B.

42. The Dispute Resolution Agreement further provides:

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

> Unless the Employee and Company mutually agree otherwise, the arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS") . . . . The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

See Exhibit B.

43. Defendant Musk subsequently purchased Twitter and formally changed the name of Twitter to X Corp. Musk is the Chief Executive Officer of X Corp., which was formally Twitter.

44. Throughout my employment, Defendants permitted me to continue carrying out my job duties in my home in New Jersey with occasional travel to Twitter's office in New York City. In or about November of 2022, Defendant Musk changed the work from home policy to require employees to work in the office and gave employees approximately 90 days to comply with the new policy. I was terminated before I was obligated to begin working in the New York office. As such, throughout my employment, I reported to work from my home in New Jersey.

45. After Musk acquired Twitter, I met with Defendant Musk to discuss my new role as Head of Information Technology, Information Security and Privacy Teams. Musk and Davis both knew that I resided in New Jersey when they promoted me to this position.

46. I would meet with Musk and Davis, the decision makers related to my employment, over Google Meet from my home in New Jersey.

47. Both Musk and Davis were fully aware that Plaintiff was present in New Jersey and that I conducted the majority of my business duties for Defendants from my home in New Jersey.

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

48. Additionally, my replacement, who still works for X Corp., is a New Jersey resident working for Defendants from his home.

**<u>CERTIFICATION</u>**

Doc ID: cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f

I hereby certify that the foregoing statements made by me are true to the best of my knowledge. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
    **Alan Rosa**

Dated: April 22, 2024



Audit trail

| | |
|---|---|
| Title | Rosa - Certification in support of opp to MTD 4.22.24... |
| File name | Rosa%20-%20Certif...22.24%20FINAL.pdf |
| Document ID | cff4c1ecd2f680e2c8714217cf797c06d9cdfc5f |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

This document was requested from app.clio.com

## Document History

**SENT**
**04 / 22 / 2024**
17:26:53 UTC
Sent for signature to Alan Rosa (alan.a.rosa@protonmail.com) from megusquiza@deutschatkins.com
IP: 75.99.183.130

**VIEWED**
**04 / 22 / 2024**
18:24:20 UTC
Viewed by Alan Rosa (alan.a.rosa@protonmail.com)
IP: 108.147.2.93

**SIGNED**
**04 / 22 / 2024**
18:24:39 UTC
Signed by Alan Rosa (alan.a.rosa@protonmail.com)
IP: 108.147.2.93

**COMPLETED**
**04 / 22 / 2024**
18:24:39 UTC
The document has been completed.

Powered by Dropbox Sign