## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN ROSA,<br><br>                 Rosa,<br><br>    v.<br><br>X CORP.; X HOLDINGS CORP.;<br>ELON MUSK; STEVE DAVIS; JOHN<br>DOES 1-10 and ABC CORPS. 1-10,<br><br>                 Defendants. | Hon. Brian R. Martinotti<br>Case No.: 2:23-cv-22908-BRM-AME<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Motion return date: May 20, 2024 |

## DEFENDANTS X CORP. AND X HOLDINGS CORP.'S REPLY
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Sean P. Lynch
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
(609) 919.6611
sean.lynch@morganlewis.com

*Attorneys for Defendants X Corp. and*
*X Holdings Corp.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ............................................................................................ 3

    I.     Rosa's Opposition Provides No Valid Reason to Refuse to
          Compel Arbitration in Accordance with the DRA.............................. 3

          A.     The DRA Requires the Parties to Share Fees and the
                 Material Terms of the DRA Trump Any Contrary JAMS
                 Policy.......................................................................................... 3

          B.     The Minimum Standards Do Not Apply..................................... 7

          C.     Twitter Has Not Waived Its Right to Arbitrate. ........................ 9

          D.     Rosa Does Not Dispute a Substitute Arbitrator is
                 Appropriate. ............................................................................. 15

CONCLUSION ........................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bahoor v. Varonis Sys., Inc.*,
    152 F. Supp. 3d 1091 (N.D. Ill. 2015) ..................................................5

*Billie v. Coverall N. Am. Inc.*,
    No. 22-718, 2023 WL 2531396 (2d Cir. Mar. 15, 2023) ...................................12

*Brown v. Peregrine Enters., Inc.*,
    No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ......................2, 12, 13

*Citisteel USA, Inc. v. Gen. Elec. Co.*,
    78 F. App'x 832 (3d Cir. 2003) ...........................................................5

*Delano v. Mastec, Inc.*,
    No. 10-320, 2010 WL 4809081 (M.D. Fla. Nov. 18, 2010)................................4

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018).......................................................................3

*Essex v. Children's Place, Inc.*,
    No. 15-5621, 2017 WL 6000347 (D.N.J. Dec. 4, 2017) ....................................7

*Forby v. One Techs., LP*,
    616 F. Supp. 3d 588 (N.D. Tex. 2022) ...................................................11

*Goobich v. Excelligence Learning Corp.*,
    No. 19-6771, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020)...........................5

*Greco v. Uber Techs., Inc.*,
    No. 20-02698, 2020 WL 5628966 (N.D. Cal. Sept. 3, 2020)...........................11

*Heisman v. Wyndham Vacation Resorts, Inc.*,
    No. 20-11480, 2021 WL 1138125 (D.N.J. Mar. 22, 2021) ...............................10

*Hernandez v. MicroBilt Corp.*,
    88 F.4th 215 (3d Cir. 2023) ..........................................................10, 11

*Lang v. PTC, Inc.*,
    21-04451, 2021 WL 5277190 (D.N.J. Nov. 12, 2021)...................................6, 9

ii

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)......................................................................................12

*Nguyen v. Dental Sleep Masters, LLC*,
    No. 17-0732, 2018 WL 6265058 (C.D. Cal. Apr. 30, 2018).............................12

*Page v. GPB Cars 12, LLC*,
    No. 19-11513, 2019 WL 5258164 (D.N.J. Oct. 17, 2019)................................10

*Passion for Restaurants, Inc. v. Villa Pizza, LLC*,
    No. 20-15790, 2022 WL 18024209 (D.N.J. Dec. 30, 2022) .......................11, 12

*Puleo v. Chase Bank USA, N.A.*,
    605 F.3d 172 (3d Cir. 2010) ...............................................................13

*Roach v. BM Motoring, LLC*,
    155 A.3d 985 (N.J. 2017) ...............................................................11

*Sabre GLBL, Inc. v. Shan*,
    No. 15-8900, 2018 WL 1905802 (D.N.J. Apr. 23, 2018) .....................................5

*Simeon v. Domino's Pizza LLC*,
    No. 17-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019)..............................7, 9

*United States v. Weiss*,
    52 F.4th 546 (3d Cir. 2022) ...............................................................5

*Waters v. Vroom Inc.*,
    No. 22-1191, 2023 WL 187577 (S.D. Cal. Jan. 13, 2023)..................................11

*Weber v. X Corp.*,
    No. 23-233, 2024 WL 470255 (E.D. Wash. Jan. 8, 2024) ...........................12, 13

*Wysocki v. Wardlaw-Hartridge Sch.*,
    No. 21-14132, 2022 WL 2168212 (D.N.J. June 16, 2022) .............................4, 6

## PRELIMINARY STATEMENT

Plaintiff Alan Rosa hopes to avoid paying his share of arbitral fees to arbitrate against X Corp. and X Holdings Corp. ("Twitter"). To do so, however, he relies entirely on JAMS' Minimum Standards, a non-contractual document, while ignoring the provision of the Dispute Resolution Agreement ("DRA") that specifically addresses how arbitral fees will be apportioned: DRA § 6. Rosa ***never mentions DRA § 6 once in his 25-page brief*** and fails to respond to any of Twitter's arguments on why that Section governs the fee dispute at issue here. Rosa's inability to explain why the Court should ignore the plain terms of the Parties' arbitration agreement only proves the Court should enforce it.

Instead, Rosa observes that a different section of the DRA generally incorporates the "JAMS Rules." That argument does not help Rosa because:

- case law is clear that specific contractual provisions regarding arbitral fees govern despite general references to arbitration rules;

- the Minimum Standards are not JAMS Rules; and

- the Minimum Standards apply only when arbitration is a condition of employment, but the DRA makes clear: "**Arbitration is not a mandatory condition of Employee's employment**," and Rosa could have "**opt[ed] out and not be subject to**" the DRA and continued his employment. DRA § 8.

All these points, which Rosa ignores, require application of DRA § 6.

Without law on his side, Rosa resorts to rhetoric: claiming that Twitter is "obstructing" his arbitration and hundreds of others (which are not relevant to this case). In those disputes, however, Twitter has made clear its willingness to pay its half of initiation fees so the arbitrator can decide who will bear what arbitration costs, as DRA § 6 requires. And Twitter has done so: in other arbitrations before JAMS, the claimant paid their share of the initiation fees, Twitter paid its share, and the arbitrator is now deciding how to apportion fees. *See* Declaration of Sean P. Lynch ("Lynch Decl.") ¶¶ 2-3. Another fact Rosa ignores is that JAMS stated, with respect to his arbitration, that an arbitrator would be assigned if Rosa likewise paid half the initiation fees—*i.e.*, what the Parties' agreement requires.

In short, Rosa's refusal to follow the DRA is what is obstructing the arbitration proceeding. That fact distinguishes the "waiver" cases he cites, wherein a party refused to comply ***with their Agreement***, not an inapplicable policy document like the Minimum Standards here. As is clear from the cases Twitter cited in its motion (which Rosa ignores), including *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023), Twitter's insisting on its contractual rights on the circumstances of arbitration does not waive its right to arbitrate. Just the opposite. Rosa should be compelled to follow the DRA's requirement to apportion fees and to submit his fee-sharing arguments to the arbitrator.

## ARGUMENT

I.   **Rosa's Opposition Provides No Valid Reason to Refuse to Compel Arbitration in Accordance with the DRA.**

A.   **The DRA Requires the Parties to Share Fees and the Material Terms of the DRA Trump Any Contrary JAMS Policy.**

Rosa begins his Opposition by embracing the idea that "[e]mployment arbitration agreements must be enforced according to [their] terms." Pl. Br. 17 (citing, *e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018)). Twitter wholeheartedly agrees: the terms of the DRA are what matter. *See* Mot. 7-9.[1]

Rosa argues, however, that "the DRA requires Twitter to pay [nearly] all" fees, Pl. Br. 17-19 (capitalization removed), without ever mentioning what the DRA says about fee-sharing in Section 6. This despite Twitter's discussing DRA § 6 throughout its brief—and arguing that it plainly requires Rosa and Twitter to share fees until the arbitrator can resolve any fee-related disputes. *See* Mot. 3-4, 9-12 (explaining that DRA § 6 requires fee sharing because fee-sharing is permissible under "applicable law"); DRA § 6 ("such fee(s) ***will be apportioned between the parties*** in accordance with said applicable law, and any disputes in that regard will

---

[1] This concession makes it odd that Rosa repeats the point that "Twitter drafted" the DRA that he voluntarily entered into. *See* Pl. Br. 17, 19; *see also id.* at 18-19, 20 (claiming "Twitter, not Rosa, selected JAMS as the entity to oversee the arbitration" despite both parties signing and agreeing to the terms in the DRA). Rosa apparently hopes to score rhetorical points with these assertions, but they are plainly irrelevant, as all agree the DRA should be enforced according to its terms.

be resolved by the Arbitrator" (emphasis added)); *see also Delano v. Mastec, Inc.*, No. 10-320, 2010 WL 4809081, at *6 (M.D. Fla. Nov. 18, 2010) (holding language requiring fees to "be apportioned between the parties by the Arbitrator in accordance with … applicable law" requires plaintiffs to "pay their share of arbitration fees upfront, even though the arbitrator may ultimately apportion costs unequally").

Rosa's silence about DRA § 6 speaks volumes. It confirms Twitter's argument that Rosa "must necessarily ignore the actual terms of the DRA" to argue Twitter must pay all arbitration fees. Mot. 19. And, by ignoring DRA § 6 entirely, Rosa forfeits any argument against Twitter's reading of DRA § 6: it requires equal fee-apportionment unless and until the arbitrator orders otherwise. *See Wysocki v. Wardlaw-Hartridge Sch.*, No. 21-14132, 2022 WL 2168212, at *4 (D.N.J. June 16, 2022) ("plaintiff conceded arguments where he failed to offer any substantive" response; "[f]ailure to raise legal arguments in opposition" results in waiver).

Rather than address the specific language on fee-sharing in DRA § 6, which is titled "Paying For The Arbitration," Rosa observes that Section 5 generally notes that an arbitration would be conducted before JAMS "pursuant to the then-current JAMS Rules." Pl. Br. 17. Rosa then asserts (without citation) that the "JAMS Rules require that the arbitration comply with the JAMS Minimum Standards," which supposedly require Twitter to bear nearly all arbitration fees. *Id.* at 17-18. Rosa also notes (at 18) that the JAMS Case Manager stated that it was "determined that the

4

Employment Minimum Standards apply in this matter," Dkt. 9-3 at 9, but does not argue that that decision was (i) made by the parties' arbitrator or (ii) is even purportedly consistent with DRA § 6. Indeed, JAMS has made clear its position does *not* take into account the parties' agreement. *See* Dkt. 13-15 at 2.

Implicit in Rosa's choice to focus solely on the DRA's incorporation of JAMS Rules and argue that they require Twitter to pay all fees, Pl. Br. 17-20, is the assumption that incorporation of those rules trumps other specific provisions in the DRA (like Section 6). But that assumption is exactly the opposite of governing law. As Twitter explained in its motion (at 16-18), it is well-settled both that specific contract terms govern general ones, *e.g.*, *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 837 (3d Cir. 2003), and in this context that specific arbitration fees provisions control over general incorporation of arbitration rules, *Sabre GLBL, Inc. v. Shan*, No. 15-8900, 2018 WL 1905802, at *5 n.8 (D.N.J. Apr. 23, 2018) (holding that "JAMS Minimum Standards" cannot "trump the parties' express" agreement including on fees). Otherwise, the specific fee provision would become entirely "superfluous." *See, e.g.*, *Goobich v. Excelligence Learning Corp.*, No. 19-6771, 2020 WL 5593011, at *3 (N.D. Cal. Sept. 18, 2020); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015).[2] Rosa cites no case law to the contrary

---

[2] Rosa's failure to even mention DRA § 6 confirms that his theory impermissibly makes that provision superfluous. *See United States v. Weiss*, 52 F.4th 546, 552 (3d Cir. 2022).

and never mentions, let alone distinguishes, the cases Twitter cited. *See generally* Pl. Br. 17-25. The plainly correct legal proposition that specific contract terms, like DRA § 6, govern over general invocation of arbitration rules is uncontested—and thus conceded. *See, e.g.*, *Wysocki*, 2022 WL 2168212, at *4.

Rosa cites a single case from this District explaining that JAMS' Minimum Standards (where they apply) require the employer to bear costs. Pl. Br. 18 (citing *Lang v. PTC, Inc.*, 21-04451, 2021 WL 5277190, at *5 (D.N.J. Nov. 12, 2021)). But *Lang* proves Twitter's point. The court looked only to JAMS' default rules because the arbitration agreement at issue did not say anything about "fee-sharing, which could be held to override the arbitration rules" that were generally incorporated. *Lang*, 2021 WL 5277190, at *5. The court made clear that deciding who pays fees is a matter of "contractual interpretation," *id.*, and only because the contract did "not explicitly say anything about allocation of arbitration fees or costs between the parties" did the court look to the JAMS Rules. *Id.* at *4 (noting the "Agreement's reference to conducting the arbitration" under JAMS' Rules "is general, and is not specifically directed to the issue of fees," such that a more specific fees rule in the contract would govern).

Given the undisputed case law that specific fee references in the DRA govern general references to JAMS Rules, the DRA's specific instructions on fee sharing must be applied whether or not the JAMS Rules conflict.

### B.     The Minimum Standards Do Not Apply.

Even if DRA § 6 did not exist and supersede any contrary JAMS rule, Rosa still could not justify requiring Twitter to pay nearly all fees. Rosa's barely explained assumption that the JAMS' Minimum Standards apply to this case remains wrong.

*First*, Twitter explained that the DRA does not incorporate the JAMS' Minimum Standards, which are not part of the "JAMS Rules" generally incorporated in the DRA. Mot. 12-13. Rosa offers no response, just asserting that JAMS Rules "require that the arbitration comply with JAMS Minimum Standards." Pl. Br. 17-18. That assumption, which has no support at all, should be rejected.

*Second*, even if the Minimum Standards were incorporated by the DRA, by their own terms they still would not apply—because agreeing to arbitration through the DRA was not "required as a condition of [Rosa's] employment." Mot. 13-16. Twitter cited several cases holding that where employees have the right to opt out of arbitration agreements with their employers, the "condition of employment" requirement is not met. *Id.* (citing, *e.g.*, *Essex v. Children's Place, Inc.*, No. 15-5621, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017); *Simeon v. Domino's Pizza LLC*, No. 17-5550, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019)).

Once again, Rosa does not cite, dispute, or distinguish any of Twitter's cases. Instead, Rosa just observes that he had to sign multiple agreements, including the DRA, on DocuSign to accept his employment offer. Pl. Br. 20. But the same offer

letter made clear that he could "choose to opt-out of the" Dispute Resolution Agreement "pursuant to its terms." Dkt. 9-6 at 4. As did the DRA itself. *See* Dkt. 9-6 at 6 ("You can choose to opt out of this Agreement"); DRA § 8 ("**Arbitration is not a mandatory condition of Employee's employment**," and Employee may "**opt out and not be subject to this Agreement**" by submitting a form "within 30 days of the Employee's receipt of this Agreement").

Rosa states that while he "could attempt to opt-out of the agreement <u>after</u> he signed the DRA," in his view "his employment was first conditioned upon him executing the DRA." Pl. Br. 21.[3] But it is not true that Rosa had to sign the DRA before opting out. Rosa concedes that he received the offer letter and DRA on December 13, 2021, and he did not have to sign and return them until December 20, 2021. Pl. Br. 20-21. Under DRA § 8, he could opt out of the DRA anytime within 30 days of its "receipt." So, he had seven days in which he could have opted out of the DRA *before* signing it. In any event, the DRA made clear that opting out at ***any time*** within 30 days of receipt would mean there was ***no*** arbitration agreement between the parties. DRA § 8. He had to ***both*** sign ***and*** not opt out for there to be mutual assent. That is not a mandatory condition of employment.

---

[3] Rosa's pejorative phrasing—"attempt to opt-out"—is baseless. Rosa does not dispute that every employee who followed the DRA's instructions for opting out indeed avoided being bound by the DRA. Mot. 14.

Indeed, even when (unlike here) a party is required to sign an agreement before opting out, the option to opt out means the agreement is not mandatory. *See, e.g.*, *Simeon*, 2019 WL 7882143, at *5 (rejecting Rosa's required-signature argument). Rosa ignores this and Twitter's other cases—conceding they are good law—and cites nothing to the contrary. Because an arbitration agreement was not a condition of Rosa's employment, the Minimum Standards' fee-arrangement does not apply even on its own terms—yet another reason it cannot trump DRA § 6.[4]

## C.   Twitter Has Not Waived Its Right to Arbitrate.

Rosa's chief argument is that Twitter supposedly "waived its right to compel arbitration" because it did not comply with the Minimum Standards. *See* Pl. Br. 19-20, 21-23. But this entire argument rests on a misstatement of the law. The cases Rosa cites stand only for the proposition that a party waives arbitration when the ***parties' agreement*** makes clear certain fee rules govern, and a party refuses to pay those fees. *See* Mot. 19-22. For the reasons discussed above, the DRA specifically provides for fee sharing among the parties, not for Twitter to pay all of Rosa's arbitration fees, and in any event, JAMS Minimum Standards' fee provisions do not apply to the DRA because arbitration was not a condition of employment. So Rosa's waiver argument fails.

---

[4] This is another fact distinguishing *Lang*, which held the JAMS Minimum Standards applied only because it was undisputed that agreeing to arbitrate was a condition of employment. 2021 WL 5277190, at *1, *4.

9

These circumstances easily distinguish this case from *Heisman v. Wyndham Vacation Resorts, Inc.*, as Twitter already explained (Mot. 19-20). Indeed, Rosa does not dispute that *Heisman* found waiver because the defendant refused to comply with the rules set out in "the parties' agreement." No. 20-11480, 2021 WL 1138125, *2-3 (D.N.J. Mar. 22, 2021) (asking whether parties "complie[d] with the rules of arbitration as provided in the Agreement"). What fees-related rules the parties' agreement requires is the relevant question for waiver. Here, again, DRA § 6 requires equal fee apportionment, and Rosa does not even argue otherwise.

The other cases Rosa cites are not to the contrary. *Page v. GPB Cars 12, LLC* similarly involved a party that refused to pay "required arbitration fees" as mandated by the "Arbitration Agreement," which expressly provided the defendant "shall advance both party's [sic] … fees." No. 19-11513, 2019 WL 5258164, at *2-3 (D.N.J. Oct. 17, 2019); *id.* at *4 (parties did "not dispute that [the] intentional refusal to pay" fee required by the Arbitration Agreement "is a default or material breach"). *Page* confirms that what the DRA says about arbitration fees is what matters.

So too with *Hernandez v. MicroBilt Corp.*, which affirmed denial of a motion to compel arbitration only because the plaintiff "fully complied" with the parties' "arbitration provision" and the movant-defendant did not. 88 F.4th 215, 218 (3d Cir. 2023). Again, the parties' agreement controls. And here, it is *Rosa* who has not "fully complied" with DRA § 6, refusing to pay half of the arbitration initiation fees.

10

Moreover, *Hernandez* relied on the AAA rules only because the agreement incorporated them and did ***not*** include any other specific, on-point provision. *See id.*; *see also Roach v. BM Motoring, LLC*, 155 A.3d 985, 995 (N.J. 2017) (distinguishable for same reasons; party failed to pay ***any*** fees or even "respond to [] arbitration demand").

Rosa also copies and pastes an entire paragraph from *Hernandez* (Pl. Br. 24-25), but the cases *Hernandez* discussed—*Greco v. Uber Techs., Inc.*, No. 20-02698, 2020 WL 5628966 (N.D. Cal. Sept. 3, 2020); *Waters v. Vroom Inc.*, No. 22-1191, 2023 WL 187577 (S.D. Cal. Jan. 13, 2023); and *Forby v. One Techs., LP*, 616 F. Supp. 3d 588 (N.D. Tex. 2022)—stand for the simple proposition that where the AAA has dismissed an arbitration because one party violated the parties' agreement, the other party may pursue its claims in court under Rule 1(d) of the incorporated AAA rules. Here, unlike in those cases, JAMS has not refused to arbitrate Rosa's claim. To the contrary, JAMS stated it would assign an arbitrator if the parties each paid half of the arbitration fees. *See* Dkt. 13-10 at 4-5. Put differently, if this Court orders Rosa to arbitrate in line with the parties' agreement (*i.e.*, to pay half of the initiation fees), the arbitration will proceed, and the arbitrator can then decide how to apportion fees going forward.[5]

---

[5] Rosa also cites *Passion for Restaurants, Inc. v. Villa Pizza, LLC*, an inapposite case where the defendant refused to pay its half of arbitration fees. No. 20-15790, 2022 WL 18024209, at *2 (D.N.J. Dec. 30, 2022). Here, Twitter has never refused to pay

After citing these inapposite cases, Rosa proclaims that "Twitter has not found one case, with similar facts to the present matter, to support its argument" that it may stand on its contractual rights. Pl. Br. 23. But Rosa just ignores the cases Twitter cited for its argument. *See* Mot. 20-21 (citing *Brown*, 2023 WL 8800728, at *3; *Billie v. Coverall N. Am. Inc.*, No. 22-718, 2023 WL 2531396, at *3 (2d Cir. Mar. 15, 2023); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412 (2022); *Nguyen v. Dental Sleep Masters, LLC*, No. 17-0732, 2018 WL 6265058, at *9 (C.D. Cal. Apr. 30, 2018)). In *Brown*, for example, the Second Circuit held that when a defendant repeatedly communicated it was "ready, willing, and able to proceed to arbitration on terms consistent with the" agreement, the defendant had not "waived arbitration" by resisting the arbitration provider's insistence on imposing its contrary fee schedule. 2023 WL 8800728, at *3. Parties are entitled to "stand on [their] contractual entitlements." *Id.*; *see Billie*, 2023 WL 2531396, at *3 (same); *Nguyen*, 2018 WL 6265058, at *9 (a breach only if party refuses to submit to arbitration as set out in "parties' agreement"). Rosa does not confront these cases because he cannot.

Rosa does attempt to distinguish *Weber v. X Corp.* on its facts, Pl. Br. 23, but he ignores its legal reasoning. The *Weber* court denied the plaintiff's request to direct

its half of fees; it has simply declined to pay all fees given its contractual right not to unless and until an arbitrator holds otherwise. If anything, the *Passion* case once again shows that the parties' agreement is what matters. *See id.* (block-quoting arbitration agreement's requirement that the "parties initially shall share all fees").

Twitter to "comply with JAMS Rules and JAMS's rulings on and interpretation of its rules," instead ordering "the parties to proceed to arbitration and to strictly observe the terms of the DRA." No. 23-233, 2024 WL 470255, at *7-8 (E.D. Wash. Jan. 8, 2024).

Next, Rosa argues that Twitter is "obstructing" the arbitration process even though it has expressly stated that it is ready and willing to pay its half of arbitration initiation fees and to proceed with arbitration if Rosa agrees to pay his half. Rosa wonders (at 20) "why [Twitter] will not simply pay the arbitration fees" that its contract does not require it to pay. But under FAA § 4, parties are entitled to enforcement of their agreements "in accordance with their terms," and the terms of the DRA require only that Twitter pay half of the fees, not Rosa's share as well. *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181 (3d Cir. 2010). Insisting on one's "contractual entitlements" only to pay a certain amount in fees is neither obstruction nor waiver. *See Brown*, 2023 WL 8800728, at *3.

Rosa also claims Twitter "is disingenuous" when it states it is ready and willing to pay its half of the arbitration initiation fees[6] because it has not yet done so. Pl. Br. 22. But Twitter has not paid its half because Rosa unequivocally stated he would not pay the other half, and JAMS will not initiate the case until both halves

---

[6] Twitter has made this uncontroverted representation on several occasions to both JAMS and Rosa's counsel. *See, e.g.*, Dkt. 13-10 at 6, 8, 9.

are paid. Dkt. 9-3 at 3-7. Twitter is not required to throw money away by sending it to JAMS when JAMS will not appoint an arbitrator without Rosa's cooperation. Twitter will pay its share of the fees as soon as Rosa agrees to pay his.

And Rosa ignores that Twitter *has* readily paid its half of arbitration initiation fees in other arbitrations where claimants agreed to pay theirs, and those arbitrations are proceeding. *See* Lynch Decl. ¶¶ 2-3. There is nothing "disingenuous" about Twitter's uncontroverted representations, on which it has followed through in every case where the claimant abides by the DRA. If there is any obstruction in this case, it is on Rosa's part. And this Court can easily break the logjam by ordering Rosa to comply with the DRA—*i.e.*, arbitrate, pay his half of the initiation fees, and raise any dispute regarding fees to the Arbitrator as DRA § 6 requires.

Finally, Rosa repeatedly claims Twitter is obstructing "at least 891 other arbitrations." Pl. Br. 19, 22-23 (citing a letter in which Twitter takes the position that the terms of its DRAs with claimants, not contradictory JAMS policies, govern arbitration). As an initial matter, what happened in other arbitrations is irrelevant to this motion to compel arbitration with Rosa in accordance with his DRA, especially given his agreement to "**arbitration on an individual basis only**." DRA § 5. But Rosa also misrepresents the letter to which he refers. Twitter is not "refus[ing] to arbitrate" in any case, let alone 891 cases. Pl. Br. 23. Rather, it has declined to arbitrate in a way that clearly violates its DRA—indeed, JAMS conceded it ignored

"the parties' agreement[s]" entirely in deciding who pays fees based on unincorporated JAMS policies. Dkt. 13-16 at 2. As explained above, such policies cannot trump the parties' specific fee-sharing agreements, and Twitter is entitled to stand on its contractual rights not to pay more.

Twitter has made clear that it was (and is) willing to arbitrate with all those claimants—just like Rosa—so long as they pay their half of the arbitration initiation fees under the parties' DRAs. Indeed, whenever a claimant has put forward its half of initial fees, Twitter has too, and the arbitration has proceeded. But it need not go along with JAMS' attempted material change to the parties' agreement—*i.e.*, applying the Minimum Standards "notwithstanding any contrary provision in the parties' arbitration agreement," Dkt. 13-15 at 2—as a matter of contract.

### D.    Rosa Does Not Dispute a Substitute Arbitrator is Appropriate.

Twitter argued (at 22-24) that this Court can and should appoint a substitute arbitrator if arbitration is not available through JAMS. Rosa does not respond, conceding this Court can and should appoint a new arbitrator if there truly is no way to proceed before JAMS. (There is a way, however: Rosa paying his fees.)

### CONCLUSION

For these reasons, and those in Twitter's Motion, the Court should compel Rosa to arbitrate his claims in accordance with the terms in the DRA. Or, in the alternative, the Court should appoint a substitute arbitrator.

Dated:  May 13, 2024                              Respectfully submitted,

                                                  MORGAN, LEWIS & BOCKIUS LLP

                                                  */s/ Sean P. Lynch*
                                                  Sean P. Lynch
                                                  502 Carnegie Center
                                                  Princeton, NJ  08540
                                                  (609) 919.6611
                                                  sean.lynch@morganlewis.com

                                                  *Attorneys for Defendants X Corp. and*
                                                  *X Holdings Corp.*

16